In the Matter of NEW YORK COUNTY LAWYERS' ASSOCIATION, Petitioner, v. BERNARD BERCU, Respondent.

Supreme Court, Special Term, New York County, March 18, 1947.

*Edwin M. Otterbourg, Mortimor S. Gordon, Frederic P. Houston, Abraham N. Davis, A. Lincoln Lavine, Abraham S. Robinson, Jacob Scholer* and *George R. Adams* for petitioner.

*Mathias F. Correa, Kevin McInerney* and *John H. Clark, III.* for respondent.

SHIENTAG, J. This is a proceeding brought by the New York County Lawyers' Association charging that the respondent, Bernard Bercu, a certified public accountant, is engaged in the unlawful practice of the law. An order is sought adjudging him in contempt of court for such alleged unlawful practice and enjoining him from its continuance.

. The respondent is a certified public accountant. He is not a lawyer. In June, 1922, he passed the New York certified public accountant examination. In September, 1924, after completing the prescribed term of practical experience required by the Board of Regents of the State of New York, he was awarded his certificate as a certified public accountant. Thereafter he engaged in the practice of public accountancy in the city of New York. Since 1942 he has been a member in good standing of the New York State Society of Certified Public Accountants; and from December, 1945, down to the present time, has been admitted to practice before the Treasury Department of the United States. From 1940 to 1943 he was engaged in the practice of public accountancy in partnership with a Mr. Gottheimer, another certified public accountant. Prior to August, 1943, both Gottheimer and the respondent were acquainted with one Joseph C. Bancroft, president of Croft Steel Products, Inc., hereinafter referred to as " the Croft Company ".

In 1943 the Croft Company made a settlement with the City of New York by which the corporation was to pay the city the sum of $12,000 for city sales taxes for the years 1935, 1936 and 1937, liability for which had been disputed.

The question then arose whether under the Federal Income Tax Law the payment to the city in 1943 could be deducted by the corporation from income earned in 1943 or whether such payment had to be allocated to the years 1935, 1936 and 1937. In those earlier years the Croft Company had made no profits, whereas in 1943 it had made so much money that it would be required to pay substantial taxes. A Mr. Jack Levy, the regular accountant for the corporation, who was also a lawyer, advised the president of the company that, although the corporation kept its books on an accrual basis, the payment could not be deducted from the 1943 income.

Respondent claims he was brought into the situation because he had some prior knowledge of the existence of the corporation's city sales tax problem. In his first discussion of this problem with Bancroft, in 1943, respondent was told that Levy had advised that the payment could not be deducted from the 1943 income. Respondent stated that he disagreed with Levy and was of the opinion that it could be so deducted. A conference was arranged and held later with the respondent, Bancroft and Levy present. Respondent restated his position, saying that in his opinion the case was similar to one that he had worked on for other clients two or three years earlier, at which time he had found a departmental ruling which indicated that he was right

and Levy was wrong. Respondent then undertook to look up the decisions and departmental rulings and to prepare a memorandum thereon, a copy of which was to be sent to Levy. For this work, respondent told Bancroft, he expected to be paid. Respondent was not auditing the books of the corporation or preparing its tax return.

Within the next few days respondent made a study of the reported decisions on the subject; he did not merely consult the tax services. In the course of this examination he found the decision that he had previously recalled. It was a ruling by the Internal Revenue Bureau, made in 1941, sustaining the respondent's position. He thereupon ceased his research, prepared his memorandum and sent it to Bancroft. This memorandum, in the form of a letter, refers to the question involved: to Levy's contention "that under the rule laid down by the United States Supreme Court a sales tax which accrued in prior years is properly deductible only in those years, * * * " and to respondent's contention that "despite this general rule, your (Croft's) case could be shown to be an exception in that there was no definite ruling as to the taxability of your products in those years and you did not bill any sales tax to your customers in those years." It also states: "At your request I have examined the available sources of information on this question and find that in 1941 the Internal Revenue Department had ruled on precisely this question * * * ". He refers to the ruling; summarizes the facts in that case and the holding made, which he states would justify the deduction in 1943 rather than in 1935, 1936 and 1937. He then continues: "In view of this specific favorable ruling I have gone no further in marshalling precedents to sustain your position."

On December 31, 1943, respondent sent a bill for $500 for services rendered; payment was refused and he sued the Croft Company in the Municipal Court. The action was dismissed at the close of the plaintiff's case on the ground that Bercu's testimony showed that what he had done constituted unlawful practice of law. An appeal was taken to the Appellate Term of the Supreme Court but was discontinued at the respondent's request.

The respondent concedes that this was not an isolated transaction; he rendered similar services for others for which he was paid as much as $50 per hour although his regular charge for auditing books was only $15 an hour. In none of these cases, including the Croft case which we are now considering, did he audit the books, work on them or prepare the tax returns. The

New York County Lawyers' Association, as petitioner herein, contends that in rendering the foregoing services, respondent performed legal services involving legal research and the giving of legal advice; that this constituted unlawful practice of law. On the other hand, the respondent claims that he was not engaged in the unlawful practice of the law when he gave his opinion, as an accountant, that the payment was properly deductible from income earned in 1943. ·

Four main questions are presented on this application:

(1) Has the court jurisdiction to grant any injunctive relief?

(2) Has the court power to punish, as a criminal contempt, an out-of-court unlawful practice of law?

(3) What constitutes the unlawful practice of law by a layman in New York?

(4) Were the services rendered by the respondent legal services or were they in the nature of advice on a problem which essentially involved proper tax accounting practice?

1.

Article 75-A of the Civil Practice Act (§§ 1221-a, 1221-b, 1221-c) provides for an action to restrain a person who renders legal services unlawfully. Section 1221-a states that the Attorney-General may maintain the action upon his own information or upon the complaint of a private person or bar association, and provides further that: " Such an action may also be maintained by a bar association organized and existing under the laws of the state of New York, upon an application to the supreme court of the state of New York, or a justice thereof, for leave to bring the same by such bar association on good cause shown therefor and proof that a written request was made upon the attorney-general to bring such an action and that more than twenty days have elapsed since the making of such request and he has failed or refused to bring such an action."

In the present case no request was made upon the Attorney-General. The petitioner argues that this failure is unimportant and states that it relies on subdivision 2 of section 90 of the Judiciary Law. That section, which contains no reference whatever to the granting of an injunction, should not be construed so as to repeal the detailed procedural requirements which the Legislature had prescribed only two years previously in article 75-A. There is no inconsistency in the two statutes: Subdivision 2 of section 90 deals with certain powers of the Supreme Court with respect to the practice of law and article 75-A describes the mode in which the power to enjoin the unlawful practice of the law is to be exercised.

Of the cases cited by peitioner in support of its position on this point, three make no mention of the requirements of article 75-A (*Matter of New York County Lawyers Assn.* v. *Epter,* 178 Misc. 907; *Matter of N. Y. County Lawyers' Assn.* [*Standard Tax & M. Corp.*], 181 Misc. 632; *Matter of N. Y. County Lawyers Assn.* v. *Dawkins,* 262 App. Div. 56, affd. 289 N. Y. 553). In a fourth, however, *Matter of N. Y. County Lawyers' Assn. (Cool)* (181 Misc. 718), the opinion contains the following statement (p. 720): "Nor is respondent's further contention that the remedy of injunction is limited to an action by the Attorney-General (Civ. Prac. Act, art. 75-A) well taken." That proceeding, like the present one, was to punish for criminal contempt and to enjoin the respondent from the unlawful practice of law. The decision was upon a motion to dismiss the petition. The denial of the motion was affirmed without opinion by the Appellate Division (268 App. Div. 901), which certified to the Court of Appeals the following question: "Upon the facts stated in the petition, was the respondent-appellant entitled to an order dismissing the petition as a matter of law?"

The memorandum decision of the Court of Appeals (294 N. Y. 853, 854) was as follows: "Question certified answered in the negative. We are of opinion that the petition states facts sufficient to constitute a cause of action. Accordingly, we do not reach the question whether injunctive relief may be granted." Since the petition could be sustained without reference to the injunctive relief demanded, the language of the court at Special Term must be treated as dictum, and, in view of the statement of the Court of Appeals, the question must be regarded as an open one.

Whether the power to issue the injunction is inherent in the courts or is given by statute is without importance on this phase of the case. Whichever view be taken, it was competent for the Legislature to prescribe the manner in which the power should be invoked. The Legislature determined that such actions should first be channelled through the office of the Attorney-General when initiated by a bar association. If the courts were to hold that, despite the explicit directions of article 75-A, this petitioner could proceed as it has here to obtain an injunction, the effect would be to nullify the legislative enactment. This the courts may not do. Whatever may be regarded as the ultimate source of the court's power, article 75-A prescribes the procedural method which bar associations must follow.

Nor would an injunction be justified in this case on the theory that the court, as a court of equity, has an inherent power to

use the remedy of injunction to prevent threatened harm to the public. *People ex rel. Bennett* v. *Laman* (277 N. Y. 368) does not apply to the situation here presented. That case in no way indicates that in the present circumstances the procedure provided in article 75-A may be disregarded. Accordingly, I hold that so far as injunctive relief is concerned, the petitioner is under a disability to proceed, not having observed the requirements of the statute and given notice to the Attorney-General.

### 2.

The proceeding is also one brought to punish for a criminal contempt under subdivision 7 of section 750 of the Judiciary Law, the so-called Piper Act, which was enacted in 1937 (L. 1937, ch. 311.) That subdivision provides as follows:

" § 750. *Power of courts of record to punish for criminal contempts.* A court of record has power to punish for a criminal contempt, a person guilty of any of the following acts, and no others: * * * 7. The supreme court has power under this section to punish for a criminal contempt any person who unlawfully practices or assumes to practice law; and a proceeding under this subdivision may be instituted on the court's own motion or on the motion of any officer charged with the duty of investigating or prosecuting unlawful practice of law, or by any bar association incorporated under the laws of this state." (As amd. by L. 1937, ch. 311, § 2, eff. May 1, 1937, and by L. 1940, ch. 202, § 15, eff. Sept. 1, 1940.)

For the petitioner to prevail, its case must be one coming within the purview of the section above set forth (cf. *People ex rel. Brewer* v. *Platzek,* 133 App. Div. 25, 26).

Respondent contends that there has been no criminal contempt in this case within the meaning of subdivision 7 of section 750 of the Judiciary Law because the acts charged against him in no way involved the dignity and authority of this court (cf. *Matter of Rotwein [Goodman],* 291 N. Y. 116, 122; 39 Col. L. Rev. 1448-1449; *Matter of N. Y. County Lawyers' Assn.* v. *Lehman,* 256 App. Div. 677, 680; *Matter of N. Y. County Lawyers' Assn.* v. *Clark,* 256 App. Div. 674).

In the *Lehman* case (*supra*) this petitioner sought to have a disbarred lawyer punished for contempt for the commission of certain acts out of court alleged to constitute the unlawful practice of law. The court said in denying the application to punish for contempt (p. 680): " The respondent here under consideration had nothing to do whatever with any court, and the authority of the court is involved only remotely by reason

of its control over attorneys. The acts of the respondent may not be said to constitute an affront to the dignity of the court.

" The intention of the Legislature in passing the amendment of 1937 was to confer power upon the Supreme Court to ' punish for a criminal contempt any person who unlawfully practices or assumes to practice law.' That power is to be exercised only when the court is directly involved.

" The Bar Association and the New York County Lawyers' Association may, if deemed advisable, cause criminal proceedings to be instituted against respondent under the appropriate provision of the Penal Law."

Absence of " direct involvement " ·of the dignity and authority of this court is more patent in this case than it was in the *Lehman* case (*supra*). It is true that the holding there might be considered dictum because the actual point decided in the *Lehman* case was that the proceeding should have been instituted in the Supreme Court rather than in the Appellate Division (*Matter of N. Y. County Lawyers' Assn.* v. *Clark,* 256 App. Div. 674, *supra*). However that may be, the dictum was much more than an incidental, passing observation. I should consider it binding were it not for the later decision of the Court of Appeals in *Matter of N. Y. County Lawyers' Assn.* (*Cool*) (268 App. Div. 901, affd. 294 N. Y. 853).

In that case the application was for an injunction and to punish for criminal contempt for out-of-court activities of the respondent, who maintained a labor relations institute. The Court of Appeals affirmed the Appellate Division's denial of the motion to dismiss. As was stated earlier in this opinion, the Court of Appeals left open the question of the sufficiency of the petition insofar as it sought injunctive relief. Hence, the only basis for the decision of the Court of Appeals in sustaining the petition was that out-of-court activities amounting to the unlawful practice of law may be punished as and for a criminal contempt under the provisions of subdivision 7 of section 750 of the Judiciary Law. Accordingly, jurisdiction must be retained insofar as the proceeding is one to punish for criminal contempt.

### 3.

The next question to be considered is what, in this State, constitutes unlawful practice of law by a layman. Does the inherent power of defining " unlawful practice of law " reside in the Legislature or in the courts?

Unquestionably in many, if not most, States the courts have exercised an inherent right to regulate the practice of law, including the power to define what shall constitute unlawful practice of law (see particularly *People ex rel. Chicago Bar Assn.* v. *Goodman*, 366 Ill. 346; *People ex rel. Ill. State Bar Assn.* v. *Peoples Stock Yards Bank*, 344 Ill. 462; *State ex rel. Johnson* v. *Childe*, 23 N. W. 2d 720 [Neb.] ; *State ex rel. Hunter* v. *Kirk*, 133 Neb. 625).

In New York, however, at least since 1822, the right and the power to regulate and control the practice of law have been vested in the Legislature (*Matter of Cooper*, 22 N. Y. 67; *Matter of Percy*, 36 N. Y. 651). Only to the extent that such power has been delegated by the Legislature to the courts do the latter have the right to act. For example, section 53 of the Judiciary Law gives the Court of Appeals the power to make rules and regulations in respect to the admission of attorneys, and subdivision 2 of section 88 of the Judiciary Law (now § 90, subd. 2) gives to the Appellate Divisions of the Supreme Court the right to discipline and censure lawyers.

The *Cooper* and *Percy* cases (*supra*) have been subjected to criticism (*In re Day*, 181 Ill. 73; Lee, " The Constitutional Power of the Courts over Admission to the Bar ", 13 Harv. L. Rev. 233; Kennedy, " Has the New York Legislature the Paramount Right to Regulate the Admission of Attorneys? ", N. Y. L. J., April 6, 1938, p. 1658, col. 1, and N. Y. L. J., April 7, 1938, p. 1678, col. 1). However, the principles laid down in those cases have been followed in some other States (*State* v. *Lockey*, 198 N. C. 551, 555; *In re State Bar Ass'n.*, 134 Fla. 851).

In any event, whether we agree with them or not, the *Cooper* and *Percy* cases (*supra*) have never been overruled in this State. It is not for a court of original jurisdiction to take issue with them. Until the Court of Appeals states otherwise, they represent the law. It is true they dealt with the power to admit and to disbar attorneys, but if there is no inherent power in the courts to regulate the admission or the disbarment of lawyers there would seem a fortiori to be no inherent power to define what shall constitute unlawful practice of the law by laymen.

The authority of *Matter of Cooper* (*supra*) is not weakened by *People ex rel. Karlin* v. *Culkin* (248 N. Y. 465, 470). In the latter case the question for determination was stated to be " whether there is power in the Appellate Division to direct a general inquiry into the conduct of its own officers, the mem-

bers of the bar, and in the course of that inquiry to compel one of those officers to testify as to his acts in his professional relations." That question was answered in the affirmative. It is one thing for the courts to exercise control over the conduct of members of the Bar who are also officers of the court; it is another thing to say who shall and who shall not become members of the Bar; it is something else again to say what those who have not become members of the Bar may or may not do.

The Legislature of this State, in sections 270 and 271 of the Penal Law, has defined what shall constitute unlawful practice of law by an individual not admitted to the bar (the remaining sections defining unlawful practice by lay individuals, viz., sections 270-a to 270-d, 272 to 277, are not here pertinent; they are detailed provisions relating largely to "ambulance chasing"). The Legislature also enacted section 280 of the Penal Law, which defines what shall constitute unlawful practice of law by a corporation, and is broader in its language than are the sections dealing with the conduct of individual laymen. It is to those sections of the Penal Law, as they are interpreted by the courts, that we must look for the definition of unlawful practice of law in this State. There is no statute which delegates such power of definition to the courts.

The Piper Act (Judiciary Law, § 750, subd. 7) passed in 1937, in no way enlarged the definition of unlawful practice of law, as set forth in the Penal Law. The Piper Act, as the Governor stated when he signed it, makes no change whatever in the substantive law. Theretofore the unlawful practice of law by a layman was punishable only by criminal proceedings. The Piper Act gave the Supreme Court, in an appropriate case, the power to punish the unlawful practice of law as a criminal contempt. All it did was to provide an additional remedy to enforce the existing law. No power was delegated to the court to enlarge or modify the statutory definition of what constitutes unlawful practice of law.

As enacted in 1898 (L. 1898, ch. 165, § 4), section 270 was aimed primarily to suppress two evils. These were (1) the appearance in courts of persons not admitted to practice, and (2) the so-called "holding out" or misrepresentation by a person unauthorized to practice law that he was a lawyer and legally entitled to act as a lawyer for clients.

There was some doubt originally as to whether the "holding out" provision of the section applied to one who misrepre-

sented himself to be a lawyer for the purpose of acting as such outside of the courtroom. It has been established, however, that the " holding out " provision applies not only to one who misrepresents himself as being entitled to practice in the courts but to one who holds himself out as entitled to practice as a lawyer " in any other manner " (*People* v. *Alfani*, 227 N. Y. 334; Opinion of the Justices to the Senate, 289 Mass. 607, 614).

Section 271 prohibits a layman from (a) asking or receiving compensation for appearing in court or before a magistrate as an attorney; (b) preparing certain enumerated legal instruments, and (c) making it a business to practice for another as an attorney in any court or before a magistrate.

In 1909 (L. 1909, ch. 483), section 280 of the Penal Law was enacted which, in the broadest language, prohibited corporations or voluntary associations from rendering legal services of any kind or nature whatsoever. In 1917 (L. 1917, ch. 783), the Legislature amended section 270 and incorporated into it the provision making it unlawful for individuals to furnish attorneys or counsel in the same manner in which that type of service was prohibited to corporations and voluntary associations by section 280.

The respondent in this proceeding has never held himself out to the public as anything but a certified public accountant, the profession to which he has belonged for over twenty years. His office door, his telephone listing, his professional announcements, have all proclaimed him a member of the accounting profession and of no other. It is undisputed that his clients understood that respondent was only a certified public accountant and held himself out only as such. He never stated or represented or conveyed the impression to anyone that he was an attorney or that he was entitled to practice law, or that he was purporting to act as a lawyer.

4.

I shall not analyze further the provisions of the pertinent sections of the Penal Law or consider whether, and to what extent, those sections are susceptible of the broad interpretation placed upon them by the petitioner.

From this point, I shall assume for the purposes of this case, without so deciding, that the Penal Law provisions are broad enough to cover " any practice of law ", by an individual layman. I shall even assume *arguendo* that the courts have inherent power to define what shall constitute the unlawful practice of law.

Keeping the foregoing assumptions in mind, was the respondent Bercu, in rendering the services which have been described, illegally practicing law?

A realistic approach must be made to a solution of this phase of the problem. The accountant, when he prepares an income tax report, has to be familiar with the Income Tax Law, the decisions of the courts relating thereto and the rulings of the administrative agency which is in charge of enforcement.

Clearly, when he is pursuing his specialized calling, he has to be in a position to advise clients on matters which may involve the law and which are directly applicable to the work he is called upon to do. Merely because an accountant gives advice which may ultimately lead to litigation and impliedly prophesies the outcome of that litigation, it does not follow that he is illegally practicing law. The question, so far as the accountant is concerned, is whether the advice that is given deals primarily with proper accounting practice under the Income Tax Law. In the interpretation of that statute, accounting and legal concepts are so intermingled that it is difficult, if not impossible, at times to separate or to distinguish one from the other.

True it may be said that when an accountant prepares an income tax return he is engaged primarily in the work of his profession, and any matter of law which directly arises in connection with his specialized functions is dealt with only incidentally. True it is, also, that even in such cases, questions of law may arise in connection with the work that is being done, which would plainly be within the exclusive competence of the lawyer. It would not be suggested, for example, that an accountant, drawing up an income tax return, may lawfully pass on questions of law such as domicile, the validity of a marriage, the construction of a will, a deed of trust, or any other legal document, upon which tax liability may on occasion depend. Even in connection with his actual preparation of an income tax return, a certified public accountant, not himself a lawyer, may not lawfully perform research work for his client or give him advice on any problem involving a knowledge of law, which is aside from the tax law itself. The respondent Bercu limited his research and his advice to principles of proper accounting, to a study of the tax law, the court decisions and the departmental rulings on the specific subject with which he was concerned. He did not go outside the tax law; he did not inquire into any other law.

The petitioner in this proceeding, without conceding that a certified public accountant has the right to draw up an income

tax return where questions of the interpretation of the Income Tax Law and the rulings of the courts and Treasury Department are involved, seeks to have the court draw a distinction between that situation and one where the accountant acts merely in a consulting or advisory capacity. The distinction, it seems to me, disregards the realities of the case. To the extent that the so-called consultant confines himself to problems that are directly related to his own calling, I see no reason for making the distinction urged. To be sure, the accountant must exercise care not to create the impression that he is acting in any capacity other than as an accountant, and not to hold himself out as being in a position to pass on matters of law which may have a bearing on tax liability but are outside the province of his specialized calling.

There are various considerations which, while perhaps not determinative, furnish sign posts pointing the way to the conclusion here reached.

In this country, from the inception of income taxation, the tax field, both Federal and State, and on the side of the Government as well as the taxpayer, has been to a large extent turned over to the accounting profession. The same was true in Great Britain and in Canada. This was entirely natural, for the new tax statutes certainly involved the application of proper accounting practices. The bar was not prepared to deal with these specialized problems; the accountants were and they stepped in immediately. On the Federal side both the Treasury Department and the Tax Court of the United States admitted certified public accountants to practice before them. The courts recognized the validity of that action (*Goldsmith* v. *U. S. Bd. of Tax Appeals*, 270 U. S. 117).

I regard as of no special significance, so far as the problem we are considering is concerned, the reservation that admission to practice as agents before the Treasury Department "shall not be construed as authorizing persons not members of the bar to practice law." Obviously, permission to represent a client before the Treasury Department or in the Tax Court implies a right to advise the client. It is only by closing our eyes to the realities of practice in the business community that it can be contended that the privilege to appear before the Treasury Department and to present the claims of taxpayers to that department has any substance or meaning without the accompanying privilege of advising taxpayers about those same matters.

In this State, also, accountants are allowed to represent taxpayers in hearings before the Tax Department. In 1942, Moreland Act Commissioner Robert M. Benjamin recommended on the basis of his investigations (Vol. IV, p. 284) that "certified public accountants be permitted to represent taxpayers at any stage of a tax proceeding, including the formal hearing stage * * *."

Finally, the Supreme Court of the United States in its decisions has indicated that the Income Tax Law is based largely on principles of accounting practice. For example, as Mr. Justice STONE pointed out in *United States* v. *Anderson* (269 U. S. 422, 441): "In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. * * * In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes have accrued." (See, also, *Commissioner of Int. Rev.* v. *Heininger,* 320 U. S. 467.)

The advice which the respondent Bercu gave in this case was based upon a ruling of the Income Tax Unit of the Treasury Department. This is an administrative ruling which does not even bind the department, much less the courts. The department promulgating these rulings is staffed principally by accountants. Bercu undoubtedly knew this and treated the ruling as amounting to what was considered by accountants to be sound accounting practice.

It is of significance to note how the Supreme Court of the United States dealt with the question on which Bercu gave advice when it had an opportunity to pass upon the point. In 1944, in *Dixie Pine Products Co.* v. *Commissioner of Int. Rev.* (320 U. S. 516, 518) a case was presented which involved the taxability of a Mississippi gasoline tax assessed in 1936 against the taxpayer. The taxpayer kept its books on an accrual basis. The tax was contested but the taxpayer nevertheless deducted the tax on its Federal income tax return for 1936. The Tax Court denied the deduction. The Circuit Court of Appeals affirmed (134 F. 2d 273) and the Supreme Court affirmed, holding that a local tax liability does not accrue so long as it is being contested by the taxpayer. The reason given was not a legal but an accounting one, the court saying (pp. 518-519): "The applicable principles of accounting on

the accrual basis had been adduced and applied by the Board of Tax Appeals in numerous decisions. It has never been questioned that a taxpayer who accounts on the accrual basis may, and should, deduct from gross income a liability which really accrues in the taxable year. It has long been held that in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid; and this cannot be the case where the liability is contingent and is contested by the taxpayer. Here the taxpayer was strenuously contesting liability in the courts and, at the same time, deducting the amount of the tax, on the theory that the state's exaction constituted a fixed and certain liability. This it could not do. It must, in the circumstances, await the event of the state court litigation and might claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated.

" To this effect are the decisions of the Board of Tax Appeals in numerous cases, and the instant decision was in line with earlier rulings as to proper tax accounting practice."

The Supreme Court itself thus characterizes the advice which Bercu gave as a question of proper tax accounting practice. In an earlier case, when deciding whether the Circuit Court of Appeals had the right to review the determination of the Tax Board, the Supreme Court held that the rulings of the Tax Board would be considered not as questions of law but as matters of proper accounting practices and hence as not reviewable by the courts. Mr. Justice JACKSON said: "The error of the court below consisted of treating as a rule of law what we think is only a question of proper tax accounting." (*Dobson* v. *Commissioner of Int. Rev.*, 320 U. S. 489, 506-507.)

There may be serious dangers in permitting this work to be done by certified public accountants. These dangers call for restraint, for self-regulation and discipline, perhaps for governmental regulation and supervision. As the authorities now stand, however, and assuming, as I have on this phase of the opinion, that the Penal Law may be construed as contended for by the petitioner, to apply to "any practice of law" by an individual layman, I see no escape from the conclusion that the respondent has not been engaged in the unlawful practice of law. Petitioner argues eloquently that it is contrary to sound public policy to permit accountants to do

the kind of work that the respondent has been doing; that it is the type of service which lawyers only should be allowed to render. That argument should be addressed to the Legislature rather than to the courts. Perhaps the entire subject of "unlawful practice of law," in this State, should be studied by a legislative commission or by the existing Law Revision Commission. The problem, as has been indicated, is essentially one for the Legislature and not for the courts.

The motion is accordingly disposed of as follows: Insofar as it seeks injunctive relief, it is dismissed for noncompliance with the provisions of article 75-A of the Civil Practice Act; insofar as it seeks to punish for contempt, it is denied and the proceeding dismissed on the merits. Settle order.