Debbie NEWMAN, et al., Plaintiffs,

v.

CHECKRITE CALIFORNIA,
INC., et al., Defendants.

No. Civ. S–93–1557 LKK.

United States District Court,
E.D. California.

Dec. 19, 1995.

Sharon Grace, Law Offices of Paul Arons, Redding, CA, for plaintiffs.

Mark Ewell Ellis, Murphy Pearson Bradley and Feeney, Sacramento, CA, Michael Karl Pazdernik, Murphy Pearson Bradley and Feeney, Sacramento, CA, for defendants CheckRite of California, Inc., CheckRite, Ltd., Inc., and Reed Benson.

Thomas Wood, Wood and Associates, Midvale, UT, for defendant Wood & Riddle.

Alvin Lundgren, Lundgren and Associates, Sacramento, CA.

Scott H. Sweat, Payson, UT, in pro. per.

## ORDER

KARLTON, Chief Judge Emeritus.

Plaintiffs brought suit under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and California Business & Professions Code § 17200 et seq.[1] The parties cross moved for summary judgment. The motions were taken under submission after oral argument and are disposed of herein.

## I.

### FACTS [2]

Plaintiffs Newman, Benefield and Reeves are individuals who wrote bad checks for retail purchases ranging in amount from four to forty six dollars. The checks were turned over to defendant CheckRite, a debt collection agency.[3] Defendant CheckRite and its in-house counsel, defendant Reed Benson, sent notices to plaintiffs demanding payment on the bounced checks and an additional service charge of twenty five to thirty dollars. When plaintiffs did not respond to these demands, their names were turned over to outside attorneys, defendants Lundgren, Kling[4], Sweat, and Wood & Riddle, who had contracted with CheckRite to recover the debts. The outside attorneys sent their own notices, which contained so called "settlement offers," premised on payment of amounts in excess of the face value of the checks. The notices threatened litigation if these payments were not made.

Plaintiffs sued, contending that defendants' debt collection practices including, inter alia, demanding more than the face value of the checks and threatening litigation where none was actually anticipated, violated the FDCPA and provisions of California's statutory and common law. Defendants maintain, inter alia, that their conduct is lawful and that, in any event, plaintiffs are not entitled to the protection of the statutes.

## II.

### SUMMARY JUDGMENT STANDARDS UNDER FED.R.CIV.P. 56

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir.1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir.1984).

Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file."

1. In addition to seeking compensation under their individual claims, plaintiffs have pled that they seek to represent a class of similarly situated debtors. However, to date, they have not applied for class certification.

2. Except as indicated, the matters referred to in this section of the opinion constitute the court's understanding of the undisputed facts.

3. Defendant CheckRite is named in the First Amended Complaint as CheckRite California, Inc. By stipulation of the parties filed June 5, 1995, CheckRite Ltd. has been added as a party and assumes liability, if any, for CheckRite California.

4. David Kling is not an attorney, but is an employee of attorney Lundgren, and works as a debt collector at Lundgren & Associates.

*Id.* at 324, 106 S.Ct. at 2553. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to sufficiently establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323, 106 S.Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968); *Ruffin v. County of Los Angeles,* 607 F.2d 1276, 1280 (9th Cir. 1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R.Civ.P. 56(e); *Matsushita,* 475 U.S. at 586 n. 11, 106 S.Ct. at 1355 n. 11; *First Nat'l Bank,* 391 U.S. at 289, 88 S.Ct. at 1592–93; *Strong v. France,* 474 F.2d 747, 749 (9th Cir.1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248–49,

106 S.Ct. at 2510–11; *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank,* 391 U.S. at 290, 88 S.Ct. at 1593; *T.W. Elec. Serv.,* 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e) Advisory Committee's note on 1963 amendments); *International Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.,* 752 F.2d 1401, 1405 (9th Cir.1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); *S.E.C. v. Seaboard Corp.,* 677 F.2d 1301, 1305–06 (9th Cir.1982). The evidence of the opposing party is to be believed, *see Anderson,* 477 U.S. at 255, 106 S.Ct. at 2514, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam)); *Abramson v. University of Hawaii,* 594 F.2d 202, 208 (9th Cir.1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), *aff'd,* 810 F.2d 898, 902 (9th Cir.1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

trial.' " *Matsushita,* 475 U.S. at 586–587, 106 S.Ct. at 1356 (citation omitted).

Under the federal rules, either plaintiff or defendant may move for summary judgment upon the entire claim or any part thereof. *See* Fed.R.Civ.P. 56(a) and (b). Upon such motion, the court is free to dispose of individual claims and specify what facts are not genuinely in dispute. Given the multiple claims and defenses, the court has concluded that it can only address these motions rationally by addressing the individual causes of action or defenses *seriatim.*

### III.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. FAIR DEBT COLLECTION PRACTICES ACT CAUSES OF ACTION

#### 1. Attorney Exemption from FDCPA

##### a. Definition of Debt Collectors

 Defendants Lundgren, Kling, Wood & Riddle, and Sweat, contend that, as attorneys working within their professional capacity, they are not debt collectors within the meaning of the statute and thus, as a matter of law, cannot be sued for violations of the statute.[5] *See* 15 U.S.C. § 1692a(6).[6] Accordingly, they seek summary judgment.[7] Plaintiffs assert that all defendants are debt collectors within the meaning of the FDCPA and ask for summary adjudication of this issue in their favor.

 As with any question of statutory interpretation, the court's first determination is whether there is binding authority that construes the statute in question. *See Tello v. McMahon,* 677 F.Supp. 1436, 1441 (E.D.Cal. 1988). In the matter at bar, defendants' argument that attorneys do not fall within the scope of the FDCPA is foreclosed by the Supreme Court's recent holding that the FDCPA applies to lawyers engaging in litigation. *See Heintz et al v. Jenkins,* —— U.S. ——, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). Accordingly, summary judgment as to this issue must be granted to plaintiffs as to all defendants who have asserted this defense.

#### b. Constitutional Challenge

 Wood & Riddle asserts that it is unconstitutional to apply the FDCPA to attorneys working in their capacity as litigators.[8] The law firm defendant asserts that the characterization of attorneys as debt collectors within the meaning of the FDCPA violates the separation of powers doctrine because attorneys are officers of the state courts, and thus, their discipline is committed to the states' supreme courts. (*See* Memorandum of Wood & Riddle in support of their motion for summary judgment at 4).[9]

 The position is difficult to address since it appears to confuse questions of state as against federal power with questions of the responsibilities of the coordinate branches of government. Below, those issues are addressed separately. Before doing so, however, I note the inherent difficulty with defendants' position. The defendants' argument is burdened by the presumptive validity

---

5. CheckRite and its in-house counsel, Reed Benson, acknowledge that they are debt collectors within the meaning of FDCPA.

6. Section 1692a(6) provides:

 The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts or who regularly attempts to collect, directly or indirectly, debts owed or asserted to be owed or due another....
 15 U.S.C. § 1692a(6).

7. Defendants also contend that plaintiffs, as bad check writers, are not consumers and thus are not entitled to protection because their debt does not fit within the statutory definition of consumer debt. This court has previously determined that

collection of dishonored checks written to retailers falls within the purview of the FDCPA. *See* Order filed August 24, 1994, at 9; *In re Scrimpsher,* 17 B.R. 999, 1010 (N.D.N.Y.1982). There appears to be no reason to revisit this issue.

8. A primary rule of construction requires that statutes are to be construed so as to avoid constitutional questions where that can be done consistent with a fair reading of the statute. *See e.g., Lorillard v. Pons,* 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978). Given the Supreme Court's holding in *Heintz, supra,* no such avoiding construction appears possible here.

9. Lundgren, Kling and Scott Sweat incorporate this argument as their own. Thus, all defendants except CheckRite and Benson make this constitutional challenge.

of federal statutes being reviewed for constitutional infirmity. *See Fullilove v. Klutznick,* 448 U.S. 448, 472, 100 S.Ct. 2758, 2771–72, 65 L.Ed.2d 902 (1980). Thus, a court must have the most compelling reasons to invalidate a statute that has been approved by both houses of Congress and signed by the President. *See Mistretta v. United States,* 488 U.S. 361, 384, 109 S.Ct. 647, 661, 102 L.Ed.2d 714 (1989). As I explain below, defendants' argument simply does not lie. To the extent it suggests that the Congress is without power to regulate the practice of attorneys because the states have accorded such power to their judicial branches, the argument fails by virtue of the Supremacy Clause. To the extent the attack is predicated on the doctrine of the separation of powers embodied in the federal constitution, it fails under the applicable tests.

### i. Supremacy Clause

■ It is true that in California regulation of the practice of attorneys is lodged with the state's Supreme Court. *See* Cal. Bus. & Prof.Code §§ 6000 *et seq.* Such, however, is not the universal practice. *See e.g., In re Bercu,* 188 Misc. 406, 69 N.Y.S.2d 730 (1947), *rev'd on other grounds,* 78 N.Y.S.2d 209, 273 A.D. 524 (1948) (the power to regulate the practice of law is vested in the Legislature which in turn may delegate that power to the courts).[10] Whatever the arrangement in the various states, however, by virtue of Article VI clause 2 of the United States Constitution,[11] such state regulation must yield to the FDCPA to the extent they are in conflict. *See Crawford v. Gould,* 56 F.3d 1162 (9th Cir.1995) ("If California's procedure conflicts with this federal statute, the Supremacy Clause of the United States Constitution requires that the state procedure be set aside"); *Bennett v. Arkansas,* 485 U.S. 395, 397, 108 S.Ct. 1204, 1205, 99 L.Ed.2d 455 (1988) (per curiam). Accordingly, if inconsistent, the federal statutory provisions governing the bad debt collection practices of attorneys trump the state laws regulating attorney conduct. *See id.*

Having noted the applicable law, the court also must note that there appears to be no conflict. There is no indication that the laws of the state of California regarding attorney conduct are inconsistent with the provisions of the FDCPA which prohibits attorney misrepresentations, other deceitful conduct or the imposing of excessive fees for debt collection. Thus, there is no reason to think that the state laws regulating attorney conduct and the FDCPA cannot co-exist harmoniously and apply simultaneously to those attorneys who choose to also function as debt collectors.

### ii. Separation of Powers

■ I noted above that defendants appear to rely on the fact that some states allocate the power to regulate attorneys to their supreme courts. Even if their argument relies on the separation of powers doctrine embodied in the federal constitution, i.e. that defendants as attorneys are officers of the federal courts and thus are regulated by the federal judiciary, it cannot prevail.

■ The Supreme Court has explained that "[i]n designing the structure of our Government and dividing and allocating the sovereign power among three co-equal branches, the Framers of the Constitution sought to provide a comprehensive system, but the separate powers were not intended to operate with absolute independence." *Nixon v. Administrator of General Servs.,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977) (quoting *United States v. Nixon,* 418 U.S. 683, 707, 94 S.Ct. 3090, 3107, 41 L.Ed.2d 1039 (1974)).

■ Two tests have evolved to resolve challenges to statutes predicated on a violation of the separation of powers doctrine, the "expansion of powers" test and the "impairment of function" test. *See United States v.*

10. I note other state practices since not all the attorney defendants are admitted to practice in California, and, in any event, defendants' attack, if successful, would have consequences for attorneys in all the states.

11. The Supremacy Clause provides in pertinent part:

This Constitution and the laws of the United States which shall be made in pursuance thereof ... shall be the supreme law of the land; and the Judges in every State shall be bound thereby....

*Ortega Lopez,* 684 F.Supp. 1506 (C.D.Cal. 1988) (en banc). The expansion of powers test applies where one branch assumes a function that is essential to and entrusted to another branch. *Id.* at 1510. The impairment of function test applies where one branch unduly impairs the function of another. *Id.*

■■■ Under the impairment test, there is necessarily no separation of powers problem where there is no conflict between the requirements of two branches of the government. *See e.g., Nixon v. Administrator of General Servs.,* 433 U.S. at 443, 97 S.Ct. at 2790; *Stop H–3 Ass'n v. Dole,* 870 F.2d 1419, 1434 (9th Cir.1989) (no separation of powers problem where one branch does not attempt to perform function of another). Thus, the separation of powers doctrine does not prevent a court from imposing sanctions on a government attorney simply because that individual works for the executive branch. *See United States v. Chanen,* 549 F.2d 1306, 1313 n. 5 (9th Cir.1977), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977) (U.S. Attorney appears before the court as both an officer of the court and an attorney for his client, and in this first capacity is responsible to the court for the manner of his conduct in a case); *Chilcutt v. United States,* 4 F.3d 1313, n. 36 and n. 37 (9th Cir.1993), *cert. denied sub. nom., Means v. Wortham,* —— U.S. ——, 115 S.Ct. 460, 130 L.Ed.2d 367 (1994) ("to restrict a district court's power to fashion an appropriate sanction, simply because the transgressor is a member of the executive or legislative branch would violate the separation of powers doctrine. Such a decision would invite members of our sister branches to ignore acceptable standards of decorum in courts and flout court orders.").[12] In sum, nothing appears to suggest a conflict between the branches and therefore, there is no impairment to the judiciary by the assertion of power by Congress.

■■■ Under the expansion of powers test, even if Congress sought to alter the inherent powers that the judiciary has to discipline officers of the court, it would likely not be prohibited from doing so. *See Chambers v.*

*NASCO, Inc.,* 501 U.S. 32, 46–47, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27, 46 (1991) (quoting *Ex parte Robinson,* 19 Wall. 505, 22 L.Ed. 205 (1874)) ("It is true that the exercise of the inherent power of the lower federal courts can be limited by statute and rule, for '[t]hese courts were created by an act of Congress.'"). Given the power that Congress has to make laws of general application, the FDCPA, a law which in part regulates the deceitful behavior of lawyers, does not offend the principle of separation of powers. The question asked under the expansion of powers test is whether the law at issue "fosters the encouragement or aggrandizement of one branch of the government at the expense of another." *See United States Dept. of Housing and Urban Dev. ex. rel. Givler v. Smith,* 775 F.Supp. 172 (E.D.Pa. 1991). Absent an effect felt by one branch, an assertion of power by another cannot be considered an incumbrance on the separation of powers.

Nothing about the FDCPA alters the judicial decision-making process, nor does it affect the ability of lawyers or judges to perform their ordinary and necessary functions. *Cf. Town of Deerfield, N.Y. v. F.C.C.,* 992 F.2d 420, 428 (2d Cir.1993); *Pacific Mutual Life Ins. Co. v. First RepublicBank Corp.,* 997 F.2d 39 (5th Cir.1993), *cert. granted sub nom, Morgan Stanley & Co. Inc. v. Pacific Mut. Life Ins. Co.,* —— U.S. ——, 114 S.Ct. 680, 126 L.Ed.2d 648 *affirmed,* —— U.S. ——, 114 S.Ct. 1827, 128 L.Ed.2d 654 (1994) (to define the constitutional separation between judicial and legislative power, "the court focuses on 'the practical effect that the congressional action will have on the constitutionally assigned role of the federal judiciary'") (citation omitted). There is no danger in the case at bar that the discipline of lawyers under the FDCPA will interfere with the ability of courts also to exert control over the conduct of attorneys practicing before it.

Under either separation of powers theory, it is readily apparent that the law is constitutionally applied to the lawyer-debt collectors.

---

**12.** Just as the rules of court apply to a member of the legislature or executive staff, members of the bar are not immune from statute. If anything, adoption of defendants' argument would create, rather than remedy, a separation of powers problem.

### 2. Excessive Charges—FDCPA § 1692f(1) and § 1692e(2)

Defendants assert that the twenty-five to thirty dollar "service charges" sought by all defendants and the "legal notice" fees and settlement offers of Lundgren and Wood & Riddle are reasonable and lawful. Accordingly, they seek summary judgment on the validity of their attempts to collect such amounts. Plaintiffs contend that the defendants violated § 1692f(1) of the FDCPA by demanding or collecting amounts not expressly authorized by agreement and not permitted by law.[13] Plaintiffs also assert that all defendants have violated § 1692e(2) by falsely representing the character and legal status of the amounts requested.[14] Plaintiffs ask for summary judgment against all defendants on these issues.[15]

Liability for these charges initially turns on whether the charges were either "expressly authorized by the agreement ... or permitted by law." 15 U.S.C. § 1692f(1).

#### a. Permissible and Impermissible Charges

In the absence of agreement, whether charges are permissible or not within the meaning of the FDCPA turns on state law. *See West v. Costen,* 558 F.Supp. 564, 582 (D.C.Va.1983). Plaintiffs assert that, for a charge to be permissible, state law must expressly authorize the fees demanded.[16] Defendants counter that the burden is on plaintiffs to demonstrate that state law prohibits particular claims. As I now explain, I cannot agree with either contention.

Once again, the issue is one of statutory construction. Where, as here, there is no binding authority, the court must undertake its explication of the statute employing the traditional methods of statutory construction. *See Tello* at 1441. Analysis commences with application of the plain meaning rule. If the meaning of the statute is clear, no further construction is required, *id.,* for "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992); *see also Stanton Road Assoc. v. Lohrey Enterprises,* 984 F.2d 1015, 1019 (9th Cir.1993), *cert. dismissed sub nom., Key Tronic Corp. v. United States,* —— U.S. ——, 114 S.Ct. 652, 126 L.Ed.2d 609, *Church of Scientology v. United States Dept. Of Justice,* 612 F.2d 417, 421 (9th Cir.1979) ("Congress does mean what it says and thus the

---

**13.** Section 1692f(1) makes unlawful:

The collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1).

**14.** Section 1692e(2) provides in pertinent part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of—
(A) the character, amount, or legal status of any debt; or
(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of the debt.

15 U.S.C. § 1692e(2).

**15.** Plaintiffs comment, in a footnote, that violations of § 1692f(1) will also generally be violations of § 1692e(2), but do not expressly request summary judgment on this issue with respect to CheckRite. However, because plaintiffs' complaint alleges violations of § 1692e and because

CheckRite responds to this issue as if plaintiffs had requested summary judgment, the court also construes it as such.

**16.** In support of their position, plaintiffs point to the ruling of a municipal court judge who is hearing the state law case brought by defendant Lundgren against plaintiff Reeves. *See Checkrite v. Reeves,* 94–cv–740 (Municipal Court of Shasta County, Order filed November 6, 1995). In Judge Boeckman's ruling on demurrer, he finds that the eighth affirmative defense proffered by the bad check writers is proper since the FDCPA "prohibits collection of a service fee unless *expressly* authorized by agreement, or state law *expressly* permits it." *Id.* The municipal court also states that there is no California law expressly permitting the collection of a service fee.

Plaintiffs concede, as they must, that this ruling does not have any precedential or res judicata effect on the instant action since the pronouncement on the validity of a defense is not a final judgment on the merits entitled to full faith and credit in this court. *See* Letter from Plaintiff's Counsel filed November 13, 1995; *Nordhorn v. Ladish Co.,* 9 F.3d 1402, 1404 (9th Cir. 1993) (for res judicata, adjudication must have reached a final judgment on the merits).

statutory language is normally the best evidence of congressional intent"). If the language of the statute is ambiguous, the court may resort to extrinsic aids to construction. *See Dodd v. John Hancock Mut. Life Ins. Co.*, 688 F.Supp. 564, 569 (E.D.Cal.1988).

■ As a matter of plain reading, the word "expressly" in § 1692f(1) modifies the phrase "authorized by the agreement" and not the phrase "permitted by law." Accordingly, it would follow that a general statutory authorization suffices.[17]

■ Despite the conclusion that a general authorization satisfies the FDCPA, it does not follow, as defendants contend, that any charges not prohibited by law are necessarily permitted. Again, as a matter of plain meaning, the word "permitted" requires that defendants identify some state statute which "permits," i.e. authorizes or allows, in however general a fashion, the fees or charges in question. *See* Webster's Third New International Dictionary (1976), p. 1683 ("permit: to consent to expressly or formally; grant leave for or the privilege of...."). I turn to the California statute relied on by defendants.

Under California law, when a check is dishonored, a seller may enforce either the instrument or the obligation. *See* Cal.Com. Code § 3310. Defendants assert that, as the assignees of the obligees after the check has been dishonored, they have the option to invoke any remedies that the merchant would have, including the right to recover service charges in the form of incidental damages for the consumers' breach. As I explain below, I need not resolve the question of whether an assignee of the underlying debt assumes the right to collect service charges since, assuming arguendo such a right, these defendants cannot prevail on this record.

Upon dishonor of the checks a merchant may recover only "commercially reasonable charges [or] expenses ... resulting from the breach." Cal.Com.Code § 2710. Assuming, without deciding, that defendants have the

right to collect service charges, they do so under the theory that they stand in the merchant's shoes when they impose a service charge. Thus, it follows that the defendants must prove that the amount of their service charges is a commercially reasonable incidental damage to the merchant. This cannot be done by referring to its own charge to the merchant as evidence of reasonable or actual cost. *See Bondanza v. Peninsula Hospital & Medical Center*, 23 Cal.3d 260, 268, 152 Cal.Rptr. 446, 590 P.2d 22 (1979). The defendants have not offered sufficient evidence to demonstrate that the amount of the service charges is a reasonable incidental cost to the merchants. Thus their argument premised on Cal.Com.Code § 3310(b)(3) fails.

In the alternative, defendants urge that the service charges are lawful because CheckRite required the merchants they served to post notices of such a charge. They contend that such posting creates an agreement between the debt collectors and check writing consumers. The parties have cited to no direct authority, nor has the court's research found any. Accordingly, I turn to general principles of contract law. As I now explain, application of that law precludes summary judgment for defendants on this issue.

■ A fundamental requirement for contract creation is mutual assent, i.e. a meeting of the minds. *See* Cal.Civ.Code §§ 1550 and 1565 (West 1982); *see also* 1 Witkin, *Summary of California Law:* Contracts § 119 (1987). Central to proof of contract formation is the mutual manifestation of intent. *See* 1 Witkin, *Summary of California Law:* Contracts § 119 (1987) ("Mutual assent is gathered from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understanding.").

Defendants' sole evidence is the declarations of the merchants who received plaintiffs' bad checks that they placed the signs in

---

**17.** Although under the plain meaning rule resort to material outside the statute is unnecessary where the statute itself resolves the issue, happily, examination of the FDCPA's history fully supports the interpretation drawn from the statute's grammar. An earlier version of the statute did use the word "expressly" to require specific stat-

utory authorization for any amounts sought to be recovered in excess of the debt. *See* S. 918, 95th Cong., 1st Sess., March 4, 1987 (prohibiting collection of any additional amount "unless such amount is expressly authorized by law"). The current statute abandoned this language.

their stores. The submitted declarations claim that it was the intention of the merchants that the notices affixed to their cash registers would alert customers to the fee that would be charged if the check did not clear. They further state that the notice of the fee for a bad check was intended to make the sale subject to that term. (*See* Check-Rite Exs. 8–13). Such evidence, however, is probative as to the intent of only one of the parties to the contract.

While it may be argued that the merchants were conditioning acceptance of checks upon their customers agreement to the charge, the signs did not so state and any ambiguity is charged to the merchants. *See* Cal.Civ.Code § 1654; *Federal Leasing Consultants v. Mitchell Lipsett Co.*, 85 Cal.App.3d Supp. 44, 48, 150 Cal.Rptr. 82 (1978) (ambiguities in lease agreement drafted by appellant resolved against appellant); *Pacific Gas & Elec. Co. v. Superior Court*, 15 Cal.App.4th 576, 596, 19 Cal.Rptr.2d 295 (1993) (the canon requiring construction against the party causing the ambiguity applies as a tiebreaker when other canons of construction fail to dispel uncertainty). This is especially true because, as noted above, the FDCPA, by it terms, requires that the contract "expressly" authorize the charges. *See* 15 U.S.C. § 1692f(1). Even if the notices are viewed as an offer by the merchants to enter into a contract, which was intended to be accepted by the writing of a check, there simply is no evidence that these plaintiffs saw the signs, or that they intended to accept the offer. I conclude that there is no evidence of a contract sufficient to permit collection of the charges under the FDCPA. Accordingly, defendants are not entitled to summary judgment on this issue.

Nonetheless, because defendants may be able to adduce evidence at trial that the service charges were commercially reasonable incidental damages to the merchants or that plaintiffs intended to enter into contracts with the merchants, summary judgment for plaintiffs is denied as to violations of § 1692f(1) and § 1692e(2) for the twenty-five to thirty dollar service charges.

### b. The "Legal" Charges

In their debt collection letters, defendant Lundgren demanded payment of an eighty-five dollar "legal notice" fee, while Wood & Riddle demanded "legal consideration for covenant not to sue." The letters also assert that the debtors are subject to potential liability for additional sums including treble damages. Plaintiffs seek summary judgment based on their claim that these collection letters violate § 1692f because the letters demand excessive fees, and misrepresent the amounts that recipients owe. These defendants argue that such fees are valid as a matter of law and thus seek summary judgment.

Defendants offer no basis for their legal fees, and indeed, defendant Lundgren has acknowledged that the amount was somewhat arbitrarily chosen. (*See*, Plaintiffs' Exhibits, Lundgren Deposition Vol. 1 at 164:19–22, 166:11–19). Defendants have offered no evidence that these "settlement" amounts are otherwise authorized by law or that the fees are tailored in such a fashion to make them acceptable under the FDCPA.[18] Moreover, terming of the fees "legal notice" or "legal consideration for covenant not to sue" implies that the fees are a legal expense or an obligatory payment to avoid suit, and thus misrepresents the nature of the charges in violation of § 1692e. Plaintiffs are entitled to summary judgment on this issue against defendants Lundgren and Wood & Riddle.

### 3. CheckRite's Vicarious Liability

In addition to seeking to impose liability on CheckRite for its own conduct, plaintiffs allege that CheckRite is liable for the conduct of the attorney defendants. At oral arguments, all defendants contended that the law firm defendants, while under contract with CheckRite, were independent contractors and not agents for the purpose of CheckRite's liability. Defendants ask for summary judgment on the issue of vicarious liability. Plaintiffs note that CheckRite supplied the law firms with form letters, kept their collection data, and did all of the investigation on

---

**18.** Because the fees are characterized by the letters as justified by virtue of the sender's status as an attorney, they appear to have no connection with charges which may be sought under California law by the merchants, or their assignees, assuming arguendo that the assignees may impose fees pursuant to Cal.Com.Code § 3310(b)(3).

the bad checks for the firms. (*See* Wood & Riddle, Response to Interrogatory No. 24; Wood Deposition at 37:23–35; Auerbach Deposition Vol. 2 at 188:13–16, 201:6–203:14; Lundgren Deposition Vol. 1 at 162:26–164:17). They contend that this suffices to justify summary judgment on this issue in their favor.

The FDCPA is silent on the issue of vicarious liability. In this circuit, however, it is established that, under the FDCPA, a debt collector may be found vicariously liable for the conduct of its attorney. *See Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir.1994); *see also Martinez v. Albuquerque Collection Servs.*, 867 F.Supp. 1495 (D.N.M.1994); *and see* 17 Am.Jur.2d Consumer Protection § 200 (1990).[19] The fact that an attorney may act as an independent contractor does not require a different result. Under general rules of agency, one who contracts to act on behalf of another and is subject to the other's control, may be both an agent and an independent contractor. *See* Restatement of Agency Second §§ 2, 14N; *Harby v. Saadeh*, 816 F.2d 436, 439 (9th Cir.1987). Accordingly, employers may be liable for the acts of independent contractors when an agency relationship is demonstrated. *See Sugimoto v. Exportadora De Sal. S.A. De C.V.*, 19 F.3d 1309, 1311–12 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 581, 130 L.Ed.2d 496 (1994). It has generally been said that an attorney is an agent even if employed for a single transaction and as an independent contractor. *See* Restatement (Second) of Agency § 1.

Under their contracts, the attorneys were to "represent CheckRite ... [for the] purpose of facilitating the collection of amounts due through use of the legal process where appropriate." (Lundgren Exhibits, Ex. 1). The law firms were thus acting on behalf and under the authority of CheckRite and were not only independent contractors, but CheckRite's agents as well.

Plaintiffs tender three theories under which they assert that CheckRite may be responsible for the acts of the law firms. First, they claim that the law firms had actual authority to act for CheckRite. Second, they contend that the facts would suggest to third persons apparent authority to do so. Third, they allege that even if the first two principles are not satisfied, CheckRite ratified the acts of the law firms by accepting a portion of the proceeds from any "settlements" that were recovered. I consider each theory in turn.

For liability to be imposed under the doctrine of actual authority, plaintiffs must show that CheckRite manifested consent for the outside attorneys to act on its behalf in the manner in which they actually proceeded. *See* Restatement (Second) of Agency § 7 (1958). Here, the contracts between CheckRite and the attorneys specifically authorize the attorneys to collect sums in excess of the face value of the checks. The contracts also provide, however, that the attorneys are required to independently determine that these amounts comply with the FDCPA. Accordingly, if the contracts represent the actual obligations of the parties, CheckRite did not grant actual authority to the attorneys to "offer settlements" for sums that violate the FDCPA. On the other hand, the evidence suggests that the relationship

---

**19.** Federal statutes creating tort liability have traditionally required the development of federal common law to fill in the interstices of the statute. *See DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (six month period of limitations found in § 10(b) of the NLRB in governed claims against the employer and the union); *American Society of Mechanical Engineers v. Hydrolevel Corp.*, 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982) (doctrine of apparent authority applies to Sherman Act). Accordingly, federal common law determines if, and under what circumstances, CheckRite may be liable under the principle of vicarious liability. *See Texas Industries v. Radcliff Materials*, 451 U.S. 630, 640, 101 S.Ct. 2061, 2066–67, 68 L.Ed.2d 500 (1981). As a general matter, federal common law often adopts state law as the rule of decisions. *See Zumbrun v. United Services Automobile Ass'n*, 719 F.Supp. 890 (E.D.Cal.1989). In the matter at bar, California agency law parallels the Restatement of Agency. *See Rutherford v. Rideout Bank*, 11 Cal.2d 479, 484, 80 P.2d 978 (1938). Since federal courts have also adopted the Restatement of Agency in fashioning federal common law, no conflict exists. As vicarious liability principles attach in the same way under both state or federal common law, I need not further consider which supplies the rule of decision. *See Sugimoto v. Exportadora De Sal, S.A. De. C.V.*, 19 F.3d 1309, 1312 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 581, 130 L.Ed.2d 496 (1994).

between CheckRite and its outside attorneys was such that CheckRite was aware of the conduct of its attorneys, and, given its business, was also aware of the requirements of the FDCPA. While these facts bear directly on the issue of ratification, they also might support a reasonable trier of facts' conclusion that the written contract between the parties did not reflect the true relationship between them.[20] Under these circumstances, summary judgment must be denied CheckRite on this issue.

■■■■■ Imposition of liability under the doctrine of apparent authority arises from a manifestation by a principal to a third party that another is his agent. *See* Restatement (Second) Agency § 8 (1958). Federal common law will impose vicarious liability on a principal for conduct within the agent's apparent authority, when that conduct is tortious under a federal statute. *See Hydrolevel Corp.,* 456 U.S. at 565–66, 102 S.Ct. at 1942–43. The evidence is such that a reasonable trier of fact could conclude that CheckRite allowed the outside attorneys to represent that they were acting as agents of CheckRite, and thus, may be liable for any unlawful tactics used in an effort to recover the amounts due. Accordingly, since vicarious liability is consistent with the FDCPA and may be applicable in this case, summary judgment for defendants must be denied.

■■■ Finally, as noted above, given the close relationship between these defendants, and CheckRite's likely understanding of the terms of the FDCPA, its acceptance of funds collected by its outside attorneys, and the totality of the circumstances, the court also must conclude that defendants are not entitled to summary judgment relative to ratification.

I now turn to the question of whether plaintiffs should be awarded summary judgment on this issue. The violations for which plaintiffs seek to impose vicarious liability upon CheckRite include the outside attorneys' threats of lawsuits without the intention to sue in violation of FDCPA § 1692e(5), threatening legal costs and damages pursuant to § 490.5 of the California Penal Code in violation of FDCPA § 1692f(1), and claims relating to allegedly inadequate validation notices. All of this conduct falls within the definition of the attorneys' contract duties as "represent[ing] CheckRite . . . [for the] purpose of facilitating the collection of amounts due through use of the legal process where appropriate." (Lundgren Exhibits, Ex. 1).

As noted above, CheckRite argues that its agreements with the attorneys shield it from liability since they provide that "[a]ttorney warrants that they will not perform any acts not permitted by law." (*Id.*) The argument is without merit.

■■■ Apparent authority results from the act of representing responsibility to others, and accordingly, cannot be avoided by private agreements between the principal and agent. CheckRite, by allowing the outside attorneys to identify themselves to third parties as representatives of CheckRite,[21] has made itself responsible for the acts of the attorneys performed in the course of that representation. The clause of the contract relied upon by CheckRite may well provide it with a right to indemnity from the attorneys if it is breached. It cannot, however, insulate CheckRite from liability to third parties who are not contractually bound by its terms, and indeed, have no knowledge of the existence of such an agreement.

---

20. Ordinarily, and historically, third parties who are not involved or bound by a contract are not limited by the parole evidence rule, and may attack the contract with extrinsic evidence. *See Von Brimer v. Whirlpool Corp.,* 362 F.Supp. 1182, 1188 (N.D.Cal.1973). I cite to federal law here because, although the parol evidence rule has a substantive law component, the issue considered here is the admissibility of evidence. In recent years various California courts have noted that a question has been raised as to whether its statute embodying the parole evidence rule may vary from the traditional rule. *See Garcia v. Truck Ins. Exchange,* 36 Cal.3d 426, 435, n. 3, 204 Cal.Rptr. 435, 682 P.2d 1100 (1984); *General*

*Motors Corp. v. Superior Court,* 12 Cal.App.4th 435, 441, n. 1, 15 Cal.Rptr.2d 622 (1993). Those courts have decided the cases before them without reaching the issue; however, they have been careful to note that there is no judicial authority for a departure from the traditional rule. It thus appears that the general principle of admissibility of extrinsic evidence proffered by a third party remains the law of that jurisdiction.

21. In some instances, CheckRite actually sent the initial letters purporting to come from the outside attorneys. (*See* Wood & Riddle Response to Interrogatory No. 24).

Thus, plaintiffs are entitled to recover against CheckRite as well as the attorneys for the acts of its agents which violate the FDCPA. Whether there are any such violations is considered in relation to the plaintiffs' motion, *infra*.

#### 4. Lundgren's Personal Liability

Defendant Lundgren asserts that he was sued as an individual, and that accordingly, the acts of the corporate entity Lundgren & Associates, are not at issue in this case. He also contends that it is too late for plaintiffs to amend their complaint to include the corporate entity, since the newly named defendant would be prejudiced by lack of discovery. This defense must be considered in relation to the causes of action arising under both state and federal law.

■ I turn first to plaintiffs' claims arising under California Business & Professions Code § 17200 *et seq.* It is settled under California law that a managing officer of a corporation with control over the operation of the business is personally responsible for the acts of his subordinates done in the normal course of business. *See People v. Toomey*, 157 Cal.App.3d 1, 15, 203 Cal.Rptr. 642 (1984); *People v. Dollar Rent–A–Car Systems, Inc.*, 211 Cal.App.3d 119, 132, 259 Cal. Rptr. 191 (1989). Defendant Lundgren concedes that he is the sole shareholder and President of Lundgren & Associates. (*See* Lundgren Deposition, Vol. 1 at 43:24–44:3). He admits that he wholly owns and controls the entity. (*See* Lundgren Deposition, Vol. 2 at 98:8–10). His position in the corporation and his operation of the business subject him to liability under plaintiffs' state law claims.

■ Nor does defendant's argument fare any better with reference to plaintiffs' federal claims. The FDCPA defines "debt collector" as any person who engages in "the collection of any debts, or who regularly at-

tempts to collect, *directly or indirectly*, debts owed, asserted to be owed, or due another." 15 U.S.C. § 1692a(6) (emphasis added). By being directly involved in the day-to-day operation of Lundgren & Associates, including training and managing employees, and reviewing or supervising the review of all accounts, (*see* Second Lundgren Declaration, ¶ 4; Lundgren Deposition, Vol. 2 at 24:19–22), Lundgren was both directly and indirectly involved in Lundgren & Associates' collection of debts. Given the plain language of the FDCPA, defendant Lundgren is a debt collector within the meaning of the FDCPA and can be held liable for any acts in which he directly or indirectly attempted to collect debts in violation of the FDCPA. *See West v. Costen*, 558 F.Supp. 564, 585 (W.D.Va. 1983).[22]

#### 5. Joint Action

Plaintiffs allege that "each of the defendants was acting in concert with the others, and was the agent or employee of each of the remaining defendants, and in doing the things alleged in this Amended Complaint, was acting within the scope of such agency." (*See* Amended Complaint ¶ 8). Defendant Lundgren asserts that since there is no evidence of joint action between his firm and Wood & Riddle, and since all plaintiffs do not have claims against all defendants, the "acting in concert" claim must be stricken.

Plaintiffs' response premised on Rule 20 joinder principles is misplaced. It is clear that these defendants are all properly joined and they do not claim otherwise.[23] This issue, however, relates to the acting in concert allegation. The court may strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R.Civ.P. 12(f).[24] Because plaintiffs concede that none of their causes of action depends on an "acting in concert" theory for viability, that allegation is surplusage and is stricken.

---

**22.** Given this resolution, Lundgren's possible additional exposure under the doctrine of alter ego need not be considered.

**23.** Plaintiffs' claims fall well within the definition of permissive joinder pursuant to Rule 20. All claims share the common thread of CheckRite. Though Lundgren and Kling may not have been working in concert with Wood & Riddle, they were all working with CheckRite. The rights asserted by plaintiffs arise out of the same series

of occurrences and the claims against all defendants share a common base in law and fact.

**24.** Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the complaint have no possible relation to the controversy, and may cause prejudice to one of the parties. *See* 5A Wright and Miller, *Federal Practice and Procedure:* Jurisdic-

The allegation regarding the agency relationships of defendants, however, is pertinent to the issue of vicarious liability. To the extent that defendant's motion is directed to that allegation, it is denied.

### 6. § 1692k(c) Defense

■ Defendant Kling, relying on 15 U.S.C. § 1692k(c), seeks judgment in his favor, asserting that as an employee of Lundgren & Associates, he was merely following office procedure, and cannot be held liable under the FDCPA or state causes of action.[25]

■ The Ninth Circuit has held that the statutory defense provided in § 1692k(c) is only intended to protect against clerical errors. *See Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir.1982). Moreover, inadvertency is not sufficient to establish the defense which is intended to protect only those debt collectors who have done all they can to avoid violations of the federal statute. *See Dutton v. Wolhar*, 809 F.Supp. 1130 (D.Del.1992); *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383 (D.Del.1991).

There is no dispute that Kling was working as a debt collector within the meaning of the FDCPA. *See* 15 U.S.C. § 1692a(6); (Plaintiffs' Exhibits, David Kling Deposition at 11:18–13:16). There is evidence that he sent written communications apparently violative of the statute (*see* Kling Declaration at 2:13–16; Lundgren Exhibits 56, 58–60; Reeves Declaration at 3:13–16), offered false and misleading representations over the phone (*see* Debbie Newman Deposition at 41:10–21; Reeves Declaration at 3:8–12; Kling Declara-

tion at 2:21–27), and benefited directly from the inducement of settlements obtained in violation of the FDCPA, (*see* Kling Deposition at 13:13–24). Neither Kling nor Lundgren has produced any evidence to demonstrate that there were adequate procedures in place to protect against violations of the FDCPA.[26] Under the circumstances, the motion must be denied.

## B. STATE LAW CAUSES OF ACTION

### 1. California Business & Professional Code Violations

Defendants assert that this court should decline to exercise supplemental jurisdiction over plaintiffs' claims under the Business & Professions Code § 17200 *et seq.* because complex issues of state statutory interpretation would be involved in their resolution. Alternatively, defendants contend that plaintiffs' claims must fail as a matter of law because defendants are entitled to immunity under California Civil Code § 47 and there is no ongoing conduct, which they claim is a prerequisite to a violation of the relevant state statute.

### a. Supplemental Jurisdiction

■ Defendants' contention that supplemental jurisdiction should be declined because state claims will likely predominate this lawsuit is unavailing. As a general matter, the court should exercise its supplemental jurisdiction where, as here, state law and federal claims arise out of the same facts and constitute a single case or controversy. *See* 28 U.S.C. § 1367(a)[27]; *Executive Software of N. America Inc. v. United States Dist. Court*

tion 2d § 1380; *see also Hanna v. Lane*, 610 F.Supp. 32, 34 (N.D.Ill.1985).

**25.** Section 1692k(c) provides:
A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide effort notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.
15 U.S.C. § 1692k(c).

**26.** There is evidence that the manual used by Lundgren & Associates was shredded at the inception of this litigation. (*See* Decl. of Chris Callon). The existence of such evidence would, at trial, be sufficient to draw an inference that *defendants viewed the document as adverse to* their position on this and other issues. *See Akio-*

*na v. United States*, 938 F.2d 158, 161 (9th Cir. 1991), *cert. denied*, 503 U.S. 962, 112 S.Ct. 1567, 118 L.Ed.2d 212 (1992) ("Generally a trier of fact may draw an adverse inference from the destruction of evidence relevant to a case"). There is a common sense explanation for the existence of a presumption of adversity in that "'a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document ...'" *Id.* (quoting *Nation–Wide Check Corp. v. Forest Hills Distribs. Inc.*, 692 F.2d 214, 218 (1st Cir.1982)).

**27.** Section 1367 provides:
(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Fed-

for Cent. Dist. of Cal., 24 F.3d 1545 (9th Cir.1994); Picard v. Bay Area Transit Dist., 823 F.Supp. 1519, 1527 (N.D.Cal.1993) (where federal and state claims are based on the same factual allegations, supplemental jurisdiction exists). In Executive Software, the Ninth Circuit made clear that "once it is determined that the assertion of supplemental jurisdiction is permissible under sections 1367(a) and (b), section 1367(c) provides the only valid basis upon which the district court can decline jurisdiction and remand pendent claims." Id. at 1551.

In the instant case, the state and federal claims arise from a common nucleus of operative facts and the state law claims are not sufficiently complex so as to permit declining jurisdiction under § 1367(c)(1). Accordingly, the motion must be denied.

### b. Privilege Under California Civil Code § 47

Defendants contend that they must be granted summary judgment as to any state law claim because California Civil Code § 47 protects their actions from all statutory and common law causes of action. The argument is unavailing.

Section 47 protects certain publications and broadcasts and makes privileged communications arising in certain contexts and from certain relationships. See e.g., Ribas v. Clark, 38 Cal.3d 355, 212 Cal.Rptr. 143, 696 P.2d 637 (1985); Rubin v. Green, 4 Cal.4th 1187, 17 Cal.Rptr.2d 828, 847 P.2d 1044 (1993); Timperley v. Chase Collection Serv., 272 Cal.App.2d 697, 77 Cal.Rptr. 782 (1969). The protections are not available to defendants here.

█ First, defendants' argument as to the applicability of the privilege contained in § 47(c) is without merit. That section is only applicable in cases involving communications

to third parties. See Timperley at 699–700, 77 Cal.Rptr. 782. Since here the only communications at issue are those between the parties directly, the privilege does not apply.

█ The privilege arising from § 47(b)(2) presents a closer question. That section protects pre-litigation communication. See Rubin, 4 Cal.4th at 1194, 17 Cal.Rptr.2d 828, 847 P.2d 1044. Defendants contend that the "settlement offers" at issue in this case are genuine pre-litigation communications. If the "settlement offers" were made in good faith in actual contemplation of litigation, the privilege afforded by § 47(b)(2) is absolute. See Id. at 1187, 17 Cal.Rptr.2d 828, 847 P.2d 1044; Silberg v. Anderson, 50 Cal.3d 205, 212, 266 Cal.Rptr. 638, 786 P.2d 365 (1990). Under California law, the privilege applies to communications with " 'some relation to a proceeding that is actually contemplated by ... a possible party to the proceeding.' " Rubin, 4 Cal.4th at 1194–95, 17 Cal.Rptr.2d 828, 847 P.2d 1044 (citation omitted).

█ The Ninth Circuit, relying on Fuhrman v. California Satellite Systems, 179 Cal. App.3d 408, 231 Cal.Rptr. 113 (1986), has held that actual good faith contemplation of suit was required, and that inquiry was factual in nature. See Premier Communications Network v. Fuentes, 880 F.2d 1096 (9th Cir. 1989). All defendants contend that Fuentes no longer accurately reflects California law since subsequent to that decision Fuhrman was disapproved. I cannot agree. While it certainly is true that in recent years the California courts have broadly applied the § 47(b)(2) privilege in the pre-litigation context, see Rubin, 4 Cal.4th at 1194, 17 Cal. Rptr.2d 828, 847 P.2d 1044, they still require that for the privilege to attach to demand letters they must be sent in good faith and actual contemplation of litigation. Id. (citing Block v. Sacramento Clinical Labs, Inc., 131

eral statute, in any civil action of which the courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action ... that they form part of the same case or controversy under Article III of the United States Constitution....
(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
 (1) the claim raises a novel or complex issue of State law,

 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
 (3) the district court has dismissed all claims over which it has original jurisdiction, or
 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction....
28 U.S.C. § 1367.

Cal.App.3d 386, 393, 182 Cal.Rptr. 438 (1982)).

■ CheckRite's initial letters alluded to the transfer of plaintiffs' accounts to outside counsel and thus suggested potential legal action. CheckRite asserts that the agreement between it and its outside attorneys is evidence that the letters were sent in good faith contemplation that litigation might ensue after the exhaustion of settlement options. *See Wilton v. Mountain Wood Homeowners Ass'n*, 18 Cal.App.4th 565, 22 Cal. Rptr.2d 471 (1993) (holding that publication of assessment liens is protected by § 47(b), even if at the time the lien is filed there is no final decision that judicial foreclosure will be pursued).[28] The other defendants only argue that their letters were legal in nature and, therefore, *per se*, constitute protected communication.

Plaintiffs counter by noting the small sums involved, the fact that the Wood & Riddle letter soliciting associate counsel excluded such sums, *see* § IV.A.3., *infra*, the incapacity of outside counsel to sue in California, *see* § IV.A.3., *infra*, the history of a failure to litigate, *id.*, and the fact that they were not actually sued. This evidence gives rise to a material dispute of fact and accordingly, summary judgment must be denied.

#### c. Ongoing Conduct

■ Defendants argue that in order to assert a cause of action for unfair business practices under the Business & Professional Code, there must be ongoing rather than completed conduct.[29] The California Supreme Court has held that "something more than a single transaction," either on-going wrongful business conduct or a pattern of wrongful business conduct, must be alleged in order to state a cause of action under the Unfair Business Practices Act. *See State of California ex rel. Van de Kamp v. Texaco, Inc.*, 46 Cal.3d 1147, 1169–70, 252 Cal.Rptr. 221, 762 P.2d 385 (1988) (complaint attacking a single merger insufficient to state a cause of action under § 17200). Plaintiffs meet this requirement since they allege a pattern of conduct rather than a single act. (*See* Complaint ¶¶ 12, 18, 22, 23, 29).

#### 2. Equitable Defenses

■ Defendants assert that they are entitled to raise state law equitable defenses to the claims for injunctive relief under state law. Specifically left open in the Court's previous Order addressing equitable defenses was the question of whether injunctive relief, which is only available under state law, may be precluded by invocation of state law equitable defenses.[30]

■ While injunctive relief is not available under the FDCPA, *see Newman v. CheckRite*, Civ–S–93–1557 (E.D.Cal. Feb 22, 1994), such relief is available under the Business & Professions Code. *See* Cal.Bus. & Prof.Code § 17203.[31] The FDCPA permits the application of similar state debt collection laws when the protection afforded consumers under the state laws is greater than that provided in the FDCPA. *See* 15 U.S.C.

---

28. The agreements executed between CheckRite and the outside counsel provide:

> It is the intent of the parties hereto that Attorney will file lawsuits to collect checks referred on which it is practical as determined by Attorney and on which all pre-litigation negotiation settlement efforts have been unsuccessful.
> Exs. 33 & 34, ¶ III(1).

29. Defendants' reliance on *Mangini v. Aerojet–General Corp.*, 230 Cal.App.3d 1125, 281 Cal. Rptr. 827 (1991), is misplaced. In *Mangini*, the court held that a plaintiff may not rely on a theory of continuing nuisance, conduct outside the purview of the Unfair Business Practices Act, to create a pattern or practice of conduct for relief under that act. *Id.* at 1156, 281 Cal.Rptr. 827. Unlike the conduct in *Mangini*, the conduct alleged in the matter at bar fits squarely within the definition of business practices governed by the Unfair Business Practices Act.

30. To the extent defendants seek to renew their claim that state equitable defenses to the federal claim may be raised, the court has resolved the issue, (*see* order filed August 24, 1994 at 9–13); there appears to be no proper basis for reconsideration. *See* Local Rule 230(k).

31. California Business & Professions Code § 17203 provides in pertinent part:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction.

This section is applicable to the instant litigation because the Business & Professions Code has been broadly construed to cover any business practice that is also not permitted by law thus incorporating FDCPA standards, and because the FDCPA is intended both to protect consumers and to foster fair competition in debt collection. *See* 15 U.S.C. § 1692e.

§ 1692n. Equitable defenses are ordinarily appropriately raised against claims under the Business & Professions Code. *See People v. James,* 122 Cal.App.3d 25, 39, 177 Cal.Rptr. 110 (1981), and thus appear relevant to this cause of action.

█ The only discernable equitable defenses raised by defendants against the Business & Professions Code claim are equitable estoppel, unclean hands, and fraud.[32] Equitable defenses, however, are personal. *See Pyrodyne Corp. v. Pyrotronics Corp.,* 847 F.2d 1398, 1402 (9th Cir.1988), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988). Thus, California courts have noted, with regard to the equitable defense of unclean hands, that an equitable bar to relief applies "only if the inequitable conduct occurred in a transaction directly related to the matter before the court and affects the equitable relationship between the litigants." *See Wilson v. S.L. Rey, Inc.,* 17 Cal.App.4th 234, 244, 21 Cal.Rptr.2d 552 (1993). Accordingly, these defendants may not rely upon alleged inequitable conduct directed to the merchants. As the alleged bad conduct of plaintiffs occurred vis-a-vis the merchants, and not the debt collectors, defendants cannot assert this conduct as a defense to the claim for injunctive relief brought by plaintiffs pursuant to the Business & Professions Code.[33]

## IV.

### *PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT*

### A. FAIR DEBT COLLECTION PRACTICES ACT CAUSES OF ACTION

1. Violation of § 1692f(1) and § 1692e(2)

█ Plaintiffs ask for summary judgment, asserting that defendants violated both § 1692f(1) and § 1692e(2) by making unfair and misleading representations in discouraging face value payments of bad checks while threatening plaintiffs with treble damages under California Civil Code § 1719. Defendants maintain that any references to damages under § 1719 merely alerted the plaintiffs to potential consequences that may flow from lack of payment on bad checks. Defendants also seek summary judgment in their favor.

California law provides that under certain circumstances treble damages may be recovered in a suit seeking the proceeds of a bounced check. *See* Cal.Civ.Code § 1719(a). Among the prerequisites for such recovery are that the check writer fails to pay the face value of the check within 30 days of notice via certified mail. *Id.* Plaintiffs contend that the initial letters received from defendants were not sent via certified mail. Defendants do not offer evidence to the contrary.

Under summary judgment practice, where the party that will bear the burden of proof at trial fails to produce evidence sufficient to give rise to a dispute concerning a material issue of fact, summary adjudication of the issue may be granted. *See Celotex Corp.,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53. Because defendants rely on the California Civil Code provisions to justify the contents of their letters, they will bear the burden at trial of demonstrating the applicability of the provisions of the Code. It has been held that imposition of treble damages is mandatory when the statutory preconditions for their application have been met. *See Mugrabi v. Suzuki,* 197 Cal.App.3d 1212, 1215, 243 Cal. Rptr. 438 (1988). The *Mugrabi* court

---

**32.** Defendant Lundgren is the only defendant that addresses these defenses both in his Answer and in his brief. Defendant Wood & Riddle, in its papers, incorporates the equitable defenses advanced by Lundgren, however, the law firm did not raise these defenses in its Answer. *See* Answer filed February 17, 1994. Conversely, CheckRite pleaded equitable estoppel, unclean hands, fraud and a multitude of other affirmative defenses in its answer, but failed to adequately address these defenses in its papers. In its opposition to Plaintiffs' motion for summary judgment, CheckRite, in a footnote, states that plaintiffs' state law claim for injunctive relief is barred by "unclean hands, fraud & so forth." (*See,* CheckRite Opposition Brief, p. 27 n. 12). The court is not responsible for determining what " & so forth" means.

Given the state of the record concerning the defenses, the court assumes, for the sake of argument, that all defendants have pled, or could plead upon amendment, the defenses of equitable estoppel, unclean hands, and fraud.

**33.** For the same reasons, equitable defenses do not apply to plaintiff Benefield's fraud cause of action.

stressed that where the "words of the statute are clear, the court should not add to or alter them...." *Id.* at 1215, 243 Cal.Rptr. 438.

It would thus appear that a strict reading of the statutory prerequisites is also required under California law. Among the statutory prerequisites to imposition of treble damages is that the notice was sent by certified mail. *See,* Cal.Civ.Code § 1719(a). Without meeting the prerequisites of the state statute, defendants' demand for payment to settle potential § 1719 damages is thus an attempt to recover amounts not authorized by law in violation of § 1692f(1). Because defendants have failed to point to anything in the record supporting their assertion that the letters were sent via certified mail,[34] and defendants will bear the burden of demonstrating the availability of this remedy at trial, summary judgment must be entered on plaintiffs' behalf on this issue.

█ Plaintiffs also assert that defendants are liable under § 1692e as a matter of law. Under that section, a misrepresentation concerning § 1719 made for the purpose of inducing plaintiffs' acceptance of the "settlement offer" is a violation of the statute. *See supra,* n. 13. A court, when reviewing the demand letters for falsity and misrepresentation under § 1692e(2), must view the evidence from the perspective of the least sophisticated consumer or debtor. *See Johnson v. Eaton,* 873 F.Supp. 1019, 1026 (M.D.La.1995).

█ Defendant Lundgren's letters state: "California Civil Code Section 1719 provides that you may be liable for the face amount of the check, PLUS three times the face amount (a minimum of $100, and a maximum of $500) PLUS the $25 service charge, PLUS court costs and other collection costs, i.e. Legal Notice. You may avoid these additional costs if you pay the settlement amount within ten (10) days." (*See* Newman Deposition, Ex. 3.) The letters are reasonably read as giving the recipient 10 days to respond to the "settlement offer" in contravention of the state statute's provision that payment within

30 days of the face value of the debt will absolve a debtor of the threat of treble damages.

The letters sent from Wood & Riddle specify the instances in which California law provides for treble damages and suggest that "[w]e would hope that you would review your position and demonstrate your willingness to honor this claim by remitting the settlement amount within 10 days." (*See* F. Benefield Deposition, Ex. 6). The letter also states that treble damages are recoverable when the bad check writer fails to pay within 30 days of written notice, but they do not mention the other requirements imposed by § 1719.

In sum, the only fair construction of the letters from Lundgren & Associates and Wood & Riddle is that they mislead because they fail to explain that treble damages do not automatically attach where the debt collector prevails in an action, and because they do not provide the statutory time to cure. Courts have routinely found in FDCPA cases that where demands for payment do not comply with state law, summary judgment is an appropriate remedy. *See e.g., Martinez v. Albuquerque Collection Serv.,* 867 F.Supp. 1495, 1506 (D.N.M.1994); *West v. Costen,* 558 F.Supp. 564, 583 (W.D.Va.1983) (summary judgment where debt collector misrepresented the amount of the debt); *Johnson,* 873 F.Supp. at 1026 (summary judgment appropriate applying the least sophisticated consumer standard concerning defendants' misrepresentation despite contention that falsity and misrepresentation were factual issues). Since, in the instant case, the false nature of the letters is apparent as a matter of law, summary judgment is appropriate.

### 2. Amounts Alleged in Lawsuit Against Plaintiff Reeves

Plaintiff Reeves asserts that CheckRite and Lundgren have violated the FDCPA by attempting to collect attorney's fees and damages in excess of those permitted by law and asks for summary judgment on these issues.

---

34. It may be that somewhere in this massive record there is evidence bearing on the issue. As the Seventh Circuit has aptly stated however, "judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel,* 927

F.2d 955, 956 (7th Cir.1991). On summary judgment, where our Local Rule 260 requires the parties to cite to evidentiary record, it is not the court's job to go sifting through depositions looking for evidence.

### a. Damages Pursuant to Penal Code § 490.5(c)

 Plaintiff Reeves challenges defendants CheckRite's and Lundgren's assertion that she is liable to them under the provisions of Cal.Penal Code § 490.5(c).[35] She asks for summary judgment on the basis that this representation is violative of § 1692f(1) and § 1692e(2). Defendants CheckRite and Lundgren seek summary judgment in their favor on this claim.

 Plaintiff's bad check writing is not per se outside the definition of petty theft under California Penal Code § 490.5(c). *See People v. Poyet,* 6 Cal.3d 530, 537, 99 Cal.Rptr. 758 (1972); *People v. Mason,* 34 Cal.App.3d 281, 284–85, 109 Cal.Rptr. 867 (1973). Nonetheless, the assertion that plaintiff may be liable to defendants for violation of this statute is without support. Under the statute's terms, retailers who receive bad checks may invoke the penal code remedy. These defendants, however, are debt collectors, not retailers. CheckRite and its contractors are barred from bringing suit pursuant to Cal.Penal Code § 490.5(c) since under state law a statutory penalty is not assignable. *See Peterson v. Ball,* 211 Cal. 461, 468–70, 296 P. 291 (1931); 1 Witkin *Summary of California Law: Contracts* § 941 p. 840 (1987 ed.). Accordingly, defendants CheckRite's and Lundgren's motion for summary judgment must be denied. For these same reasons, plaintiff Reeves is entitled to summary judgment.

### b. Damages Pursuant to California Civil Code § 1719

Defendants Lundgren and CheckRite also claim damages pursuant to California Civil Code § 1719 in their suit against plaintiff Reeves. Because an action for recovery of treble damages does not necessarily violate the FDCPA, defendants may have a viable claim under § 1719 if its prerequisites are met. The record in the state court action is not before the court and may be different than the record presented here. Since it is not per se futile to bring a cause of action for § 1719 treble damages, plaintiff must be denied summary judgment as to this issue.

### c. Defendant Lundgren's Request for Attorney's Fees

 In the state court action against Reeves, defendant Lundgren also seeks attorney's fees. Under the American Rule, ordinarily each party bears their own attorney's fees. Cal.C.C.P. § 1021; *Gray v. Don Miller & Assocs., Inc.,* 35 Cal.3d 498, 198 Cal.Rptr. 551, 674 P.2d 253 (1984). Defendant Lundgren cites no authority relevant to these claims and his arguments for an alteration of the general rule are not persuasive. I conclude that there is no right to attorney's fees in collection cases under California law.

The only published opinion that has addressed the issue of violations of the FDCPA premised on a demand for unauthorized attorney's fees found that it is a violation of the federal statute to seek fees where none are available under state law. *See Strange v. Wexler,* 796 F.Supp. 1117, 1118 (N.D.Ill. 1992). *Strange* reasoned that the statute's purpose is to protect consumers from any demands for relief that are not allowable by law. Without necessarily finding that a cause of action is stated under the FDCPA on every occasion where bad lawyering has led to an unauthorized claim, I am satisfied that when attorneys seek fees they should be aware of the law pertinent to the claim. Since none of the claims presented by Lundgren and CheckRite in the state court action allow for recovery of attorney's fees, Lundgren's request for such is an action that cannot legally be taken within the meaning of the FDCPA. *See* 15 U.S.C. §§ 1692f(1) and 1692e(5). Summary judgment is granted to plaintiff Reeves as to this claim.

### 3. Threatening Lawsuits—FDCPA § 1692e(5)

All plaintiffs assert that the dunning letters received from all defendants threatening litigation were violative of § 1692e(5) of the FDCPA.[36] In varying terms, these letters

---

35. The statute provides in pertinent part:
When an adult or emancipated minor has unlawfully taken merchandise from a merchant's premises, ... [he or she] shall be liable to the merchant ... for damages of not less than fifty

dollars ($50) nor more than five hundred dollars ($500), plus costs.
Cal.Penal Code § 490.5(c).

36. This section provides:

conveyed the notion that failure to pay the amounts demanded would result in suit. Plaintiffs urge that defendants made threats to sue without the ability or the intent to do so, and accordingly ask for summary judgment on this issue. Defendants seek summary judgment in their favor, contending that they had the requisite intent and were working with attorneys who had the ability to file suit in California.

A determination of defendants' liability under this claim turns on two questions: (1) whether there was threatened legal action and, if so (2) whether such action could legally be taken or whether there was an intent to bring a court action in the absence of payment. I first examine the standards applicable to resolution of the issues.

 Although the Ninth Circuit has not directly applied the "least sophisticated consumer" test to allegations of threats of legal action without intent to sue, it has consistently applied the test to other behavior prohibited by § 1692e(5). *See Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir.1988) (§ 1692e(5) violated where the least sophisticated consumer would read demand letter as announcing that debt collector would contact debtor's employer although it legally could not do so); *see also Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir. 1982). Other circuits have applied the least sophisticated debtor test to § 1692e(5) suits premised on the threatening of suit without an intention to sue. *See Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2d Cir. 1993); *and see Gammon v. G.C. Servs.*, 27 F.3d 1254 (7th Cir.1994); *Dutton v. Wolpoff & Abramson*, 5 F.3d 649 (3d Cir.1993). *Contra see Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir.1985) (inquiry under § 1692e(5) is an objective one concerning the

collector's intent, not the debtor's perception).[37] I conclude, in accordance with the weight of authority, that the "least sophisticated consumer" test is appropriate applied in determining whether there was a threat to take legal action.

 Given the test, the letters sent by all the defendants contained a threat of legal action. CheckRite's letters were on stationary inscribed with its in-house counsel's name, and announced that unpaid accounts would be turned over to outside counsel which might result in "damages and court costs." (*See* CheckRite Motion for Summary Judgment, Exs. 2 & 23). Lundgren's letter to plaintiff Newman announced that she had to pay within 10 days "to avoid [a] lawsuit." (*See* Plaintiff's Exhibits, Debbie Newman, Ex. 3). Finally, Wood & Riddle's letters stated "[o]ur client has asked us to send you a DRAFT copy of the law suit we prepared against you[,]" and included a sample complaint with defendant attorney Sweat's signature block at the bottom of the page. (*See* Plaintiffs' Exhibits, Frances Benefield, Exs. 6 & 7). The threat element is satisfied beyond reasonable dispute.

 In order to prevail on summary judgment, however, plaintiffs must also demonstrate that there is no material issue of fact concerning defendants ability or intent to sue. Plaintiffs rely on the fact that the attorney defendants, with whom CheckRite contracted, were not admitted to practice in California. They further note that Lundgren had not contracted with any California attorney to bring suit, and that while Wood & Riddle had contracted with a California lawyer, the facts demonstrate that they had no intention of using his services to sue these plaintiffs.

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ... (5) The threat to take any action that cannot be legally taken or that is not intended to be taken.
15 U.S.C. § 1692e(5).

**37.** In *Swanson,* the Ninth Circuit rejected the determination in *Jeter* that the consumer's comprehension and sophistication were irrelevant to

the inquiry concerning the collector's intent, holding that "[t]o the extent that *Jeter* can be read to reject the least sophisticated debtor standard for any threats alleged to violate 15 U.S.C. § 1692e(5), we disagree." *Swanson,* 869 F.2d at 1227. It appears to this court, however, that the cases can, and should be reconciled by applying the "least sophisticated consumer" standard to the issue of the "existence of a threat," while considering the collector's intent in determining the "not intended to be taken" issue as one of fact resolved by weighing the conflicting evidence.

In determining whether an act can legally be taken, it is appropriate to look to state law. *See Gaetano v. Payco of Wisconsin, Inc.*, 774 F.Supp. 1404 (D.Conn.1990); *see also West v. Costen,* 558 F.Supp. 564 (D.C.Va.1983) (looking to state law to determine whether debt collector has violated § 1692f(1) "amount not permitted by law" provision). Various courts have found violations of § 1692e(5) when debt collection agencies have engaged in collection practices or have threatened to engage in collection practices without the appropriate state license. *See Gaetano,* supra; *Kuhn v. Account Control Technology, Inc.*, 865 F.Supp. 1443, 1452 (D.Nev.1994). I thus turn to the facts in light of their relation to the California Bar and its members.

The letterhead on defendant Lundgren's demand letters read "Lundgren & Associates, Attorneys at Law" and the communication is entitled, "NOTICE OF RIGHT TO SUE PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1719." The letter warns in bold-face capitals, "IF YOU WANT TO AVOID GOING TO COURT AND RISKING LIABILITY FOR THE FULL AMOUNT ABOVE—YOU MUST CALL NOW!" Fairly construed, much less as tested under the sophisticated consumer standard, the letter notifies the recipient that an attorney sent it and announced therein his readiness to file suit.

Many of these letters were signed by defendant Kling who was not an attorney at all. Moreover, neither Lundgren nor Kling was in a position to file suit "NOW." At the time Lundgren sent demand letters to the plaintiffs, he was not a member of the California Bar. (*See* Lundgren Exhibit 3; Lundgren Declaration at 3:27; Plaintiffs' Exhibits, Lundgren Deposition Vol. 2 at 8:13). Thus, for instance, the letter from Lundgren & Associates to plaintiff Brenda Reeves dated April 12, 1993, was sent a full year before Lundgren was admitted to practice in California.[38] There is no evidence that Lundgren sought to associate counsel in California to pursue litigation against these plaintiffs. Given these defendants inability to take the legal action threatened in their letters, a violation of § 1692e(5) exists as a matter of

law. Accordingly, summary judgment is granted to plaintiffs against defendants Lundgren and Kling for violations of § 1962e(5).

Defendants Wood & Riddle, on the other hand, while not admitted in California, (*see* Wood Deposition at 6:5–13 and Riddle Deposition at 9:10–21), had entered into an agreement with Scott Sweat, who was licensed to practice in California. Defendant Sweat, however, admits that while he authorized use of his name on the draft complaint circulated by Wood & Riddle, he had no intention to personally file suit. (*See,* Plaintiffs' Exhibits, Sweat Deposition at 47:25–48:14). Such conduct falls squarely within that prohibited by § 1692e(5) and plaintiffs are entitled to judgment against defendant Sweat as a matter of law. Moreover, it is clear, as plaintiffs contend, that Wood & Riddle had no intention to file the lawsuits at issue in this case.

Ordinarily, intent and motive are paradigmatic issues for resolution by the trier of fact at trial. *See Simpson v. United States,* 652 F.2d 831 (9th Cir.1981); *Gard v. United States,* 594 F.2d 1230 (9th Cir.1979), *cert. denied,* 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979). *Grason Electric Co. v. Sacramento Municipal Utility Dist.,* 571 F.Supp. 1504, 1507 (E.D.Cal.1983). Nonetheless, summary judgment is appropriate if all reasonable inferences defeat the claims of one side, even when intent is at issue. *See White v. Roper,* 901 F.2d 1501, 1505 (9th Cir.1990).

As noted, Wood & Riddle were not licensed in the state at the time the notices were sent. The solicitations they sent to potential affiliates in California explained that the firm contemplated suing only those individuals who wrote bad checks for amounts more than $50 or who had written more than three checks that bounced. (*See* Plaintiffs Exhibits, Sweat Deposition Ex. 10, "California Collection Proposal"). None of the plaintiffs fall within those criteria. All reasonable inferences thus lead to the conclusion that Wood & Riddle had no intention to file suit against these plaintiffs and therefore

---

**38.** The fact that Lundgren did bring suit against Reeves after this lawsuit was filed does not speak to his state of mind or his ability to sue at the time the letter was sent.

made false statements in violation of FDCPA § 1692e(5). Summary judgment is appropriately granted to plaintiffs against Wood & Riddle on this issue. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

Finally, CheckRite's letters represent that it would refer unpaid checks to "outside counsel for litigation," an action that could legally be taken. It, and its in-house attorney Benson, seek to demonstrate their intention that lawsuits would be filed by pointing to the agreements CheckRite had with the outside attorneys. While this evidence was sufficient to create triable issues of fact as to these defendants' good faith contemplation of litigation for purposes of the § 47(b)(2) privilege, it does not suffice under the FDCPA because under the federal statute present intent is required. For the reasons noted above, however, the evidence conclusively demonstrates that the attorneys they allegedly relied on to bring suit were not able to bring suit or had no intention of doing so. Moreover, as is discussed in § III.A.3. *supra*, CheckRite can be held vicariously liable for the empty threats of its agents. Accordingly, plaintiffs' motion for summary judgment shall be granted as to defendant CheckRite.

As to defendant Benson, there has not been a sufficient showing as to his state of mind. Since it is his employer, rather than Benson who is the client of the outside lawyer defendants, it does not appear that he is vicariously liable as their principal. For these reasons, plaintiffs' motion for summary judgment against defendant Benson must be denied.

### 4. Letters without Validation Notices

Plaintiffs assert that all defendants violated § 1692g of the FDCPA by failing to include validation notices and disclosures with their debt collection letters. Consequently, they ask for summary judgment.

Section 1692g provides that "within five days after the initial communication with a consumer ... a debt collector shall send the consumer a written notice containing [a list of disclosures and notifications]." 15 U.S.C. § 1692g. This validation notice also must acknowledge that the consumer has thirty days in which to dispute the debt. *Id.* If the consumer disputes the debt, collection activity must cease until verification of the disputed information is mailed to the consumer. 15 U.S.C. § 1692g(b).

All the initial letters in the matter at bar had validation notices. While CheckRite's follow-up letter does not contain a proper validation notice, (*see* Plaintiffs' Exhibits, Deposition of Debbie Newman, Ex. 2), in this circuit such notices need appear only in the first communication concerning any given debt. *See Pressley v. Capital Credit & Collection Serv., Inc.*, 760 F.2d 922 (9th Cir. 1985).[39]

Plaintiffs contend that the notices also violate § 1692g because they are not sufficient to alert consumers to their legal rights. The Ninth Circuit has held that the "least sophisticated consumer" test is to be applied to § 1692g. *See Swanson*, 869 F.2d at 1225.[40] The notice must sufficiently inform the least sophisticated debtor of her rights under the FDCPA and it must be large enough and prominent enough to be noticed and read. *Id.* Moreover, if it is contradicted by other messages, it will not be considered sufficient to shield the collection agency or the collector from liability. *Id.* Similarly, if the message contained in the notice is overshadowed and/or contradicted, it will not be found to comply with § 1692g. *See id.; Miller v. Payco–General American Credits, Inc.*, 943 F.2d 482, 484 (4th Cir.1991) ("in order to abide by the statute, [the collector] simply needs to convey effectively the validation notice without contradicting it.").

Both Lundgren & Associates' and Wood & Riddle's letters use a minuscule font to convey the debt validation notice. The small print of the Wood & Riddle validation

---

**39.** *Pressley* has been roundly criticized. *See e.g., Dutton*, 5 F.3d at 655; *Carroll v. Wolpoff & Abramson*, 961 F.2d 459, 461 (4th Cir.1992), *cert. denied*, 506 U.S. 905, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992); *Tolentino v. Friedman*, 46 F.3d 645, 649 (7th Cir.1995), *cert. denied*, —— U.S. ——, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *Pipiles v. Credit Bureau of Lockport*, 886 F.2d 22, 27 (2d Cir.1989). Nonetheless, it is the law of this circuit.

**40.** This test is the law of this, and most other circuits, and defendants' contention that it is vague and confusing is unavailing.

notice immediately precedes the following: "COURT ACTION MAY BE COMMENCED IN THE COUNTY WHERE YOU RESIDE OR WHERE THE CHECK WAS ISSUED." (*See* F. Benefield Deposition, Ex. 6). Plaintiffs correctly contend that this size and language have substantial potential for over-shadowing the effectiveness of the notice. While it may be said that neither Lundgren's letter nor Wood & Riddle's letter conform to the spirit of the statute, reasonable people could disagree about whether the font and positioning provided by defendants adequately convey notice of rights to the least sophisticated consumer. Accordingly, the matter is for the trier of fact and plaintiffs' motion for summary judgment on the sufficiency of the validation notices must be denied.

### 5. False Representation—FDCPA § 1692e(3)

Under the FDCPA "the false representation or implication that any individual is an attorney or that any communication is from an attorney" is prohibited. 15 U.S.C. § 1692e(3). Plaintiffs charge that all defendants have violated this section and request summary judgment.

Plaintiffs assert that CheckRite violated the statute by including Reed Benson's name on their follow-up demand letters. They assert that the presence of an attorney's name on the letterhead falsely implies that the letters were sent by an attorney acting in that capacity. Plaintiffs contend that Wood & Riddle and Lundgren & Associates also violated § 1692e(3) because their communications falsely imply that the sender of the letters was an attorney who had reviewed the files, when no such individualized investigation had been performed.

 In determining whether these letters are violative of § 1692e(3), the appropriate standard to apply is again that of the least sophisticated debtor. *See Swanson*, 869 F.2d at 1227; *Martinez*, 867 F.Supp. at 1500 (applying least sophisticated debtor standard to claim that form letter cursorily signed by attorney violated § 1692e(3)). Under the FDCPA, an attorney who signs a dunning letter, must have reviewed the debtor's file and have some knowledge about the specific alleged debt. *See Masuda v. Thomas Richards & Co.*, 759 F.Supp. 1456, 1460 (C.D.Cal.1991) (finding violation of § 1692e(3) where letter from collection agency falsely implied that attorney had personally reviewed debtors' file). If there has been no individualized review of a debtor's case, a communication from that attorney is considered false and misleading for purposes of the FDCPA. *Id.; see Clomon v. Jackson*, 988 F.2d 1314 (2d Cir.1993) (violation of § 1692e(3) when attorney signed letter but did not review individual debtors' files, did not determine if particular letters should be sent, and did not know identities of persons to whom letters were issued); *cf. Anthes v. Transworld Systems, Inc.*, 765 F.Supp. 162, 166–67 (D.Del.1991) (finding no violation of § 1692e(3) where collection letter was sent directly from attorney's office and attorney reviewed information provided by debt collection agency "to independently determine whether one of his letters should be sent.")

 At the time the letters were sent, defendant Benson had performed no review of individuals files, (*see* Plaintiffs' Exhibits, Benson Deposition at 53:19–25, 54:1–2), nor was he involved in the decision to send out the letters. In short, he was not acting as an attorney for CheckRite in the capacity implied by the letters, thus violating the statute. *See Dutton*, 5 F.3d at 653. Accordingly, summary judgment is entered for plaintiffs against CheckRite and Reed Benson on this issue.

Plaintiffs have produced testimony of Lundgren & Associates' employees to the effect that neither Lundgren, nor any other attorney, reviewed the files of the debtors before the mailings were sent out on Lundgren & Associates letterhead.[41] This testimony is essentially unrefuted, and accord-

---

41. The testimony of a former receptionist and office manager of Lundgren & Associates is that the initial letter with the Lundgren & Associates letterhead was sent by CheckRite and that a computer was primarily responsible for determining which of the case files would be pursued through dunning notices. (*See* Renee Mercer Deposition 23:8–24:2, 106:2–12); (*See also* Declaration of Chris Callon filed October 17, 1994 at ¶ 4 and Declaration of Chris Callon filed December 15, 1994 at ¶ 13(c)).

ingly, summary judgment is entered for plaintiffs against defendant Lundgren.[42]

Wood & Riddle assert that they did review files prior to drafting and sending letters to certain debtors. Wood & Riddle offer no evidence, however, that they were involved in the review of these plaintiffs' cases. (*See* Wood & Riddle Response to Plaintiffs' Motion for Summary Judgment at 20:1–8). Moreover, in deposition, Thomas Wood admitted that he had not reviewed the accounts of any of the named plaintiffs before the notices were sent out. (*See* Wood Deposition at 164:11–165:6). Jesse Riddle testified that the legal assistants who worked with his law firm were charged with the review of the accounts and the computer person was primarily charged with sending out the notices after the referrals from CheckRite were received. (*See* Riddle Deposition at 35:20–39:5). The question then is whether under § 1692(e)(3) legal assistants, rather than attorneys may review the files.

■■■■ Analysis once again commences with application of the plain meaning rule. If the meaning of the statute is clear, no further construction is required. *See Tello,* 677 F.Supp. at 1441. Congress must be presumed to have said what it means. *See e.g., Connecticut Nat'l Bank,* 503 U.S. at 253, 112 S.Ct. at 1149; *Stanton Road Assoc.,* 984 F.2d at 1019; *Church of Scientology,* 612 F.2d at 421. As previously noted, ordinarily it is only when the language of the statute is ambiguous that a court may resort to extrinsic aids of construction. *See Dodd,* 688 F.Supp. at 569. Here, the language is unambiguous. The statute requires "attorney" review. Wood & Riddle concede this requirement was not satisfied. Accordingly, entry of summary judgment for plaintiffs is appropriate.[43]

## V.

### ORDER

Accordingly, for all the reasons stated above, the court hereby Orders as follows:

1. Plaintiffs' motion for summary judgment is GRANTED concerning all attorneys as debt collectors under the § 1692a of the FDCPA;

2. Defendants' motion for summary judgment based on the unconstitutionality of applying the FDCPA to lawyers is DENIED;

3. Defendants' motion for summary judgment is DENIED concerning violations of § 1692f(1) and § 1692e(2) for excessive charges;

4. Plaintiffs' motion for summary judgment is DENIED concerning violations of § 1692f(1) and § 1692e(2) for excessive charges as to CheckRite, but is GRANTED as to the "legal notice" charges imposed by defendants Lundgren and Wood & Riddle;

5. Plaintiffs' motion for summary judgment is GRANTED concerning CheckRite's vicarious liability for the acts of the other defendants;

6. Defendant Lundgren's motion for summary judgment based on his lack of personal liability is DENIED;

7. Defendant Lundgren's motion to strike the joint action allegation is GRANTED, except that the allegations regarding agency relationships between CheckRite and the other defendants are maintained;

As to CheckRite's concerns that the testimony of Chris Callon violates the attorney-client privilege, I do not reach this issue. The statements of Mr. Callon have been used only to determine liability of defendant Lundgren, and only to the extent that they comport with the Federal Rules of Evidence.

[42] The three declarations of Chris Callon, filed on October 17, 1994, December 6, 1994, (as Exhibit A to "Objections to Plaintiffs' Evidence") and December 15, 1994, respectively, raise substantial questions about the ethical practices of Alvin Lundgren. Accordingly, upon the filing of this order, the declarations and a copy of this order shall be referred to the California Bar for investigation. For the purposes of the motions before me, I rely on the substance of the October 17, 1994, and the December 15, 1994, declarations since the latter verifies the former, and the accounting of the events leading up to the December 6, 1994, declaration, render it wholly incredible.

[43] The court does not rule out satisfaction of the statute by legal assistant review under the active supervision of an attorney. Wood & Riddle, however, do not assert that they actively participated in the review of plaintiffs' files.

8. Defendant Kling's motion for summary judgment under § 1692k(c) is DENIED;

9. Defendants' motion for declination of supplemental jurisdiction is DENIED;

10. Defendants' motion for summary judgment on the state law claims based on § 47 privilege is DENIED;

11. Defendants' motion for summary judgment on the Cal.Bus. & Prof.Code cause of action based on equitable defenses and a lack of ongoing conduct are DENIED;

12. Defendants' motion for summary judgment on § 1692f(1) and § 1692e(2) liability for threatening treble damages pursuant to Cal.Civ.Code § 1719 is DENIED;

13. Plaintiffs' motion as to the liability under § 1692f(1) and § 1692e(2) is GRANTED;

14. Plaintiff Reeves' motion for summary judgment concerning the Cal.Penal Code § 490.5 and attorney's fees causes of action in the state court action is GRANTED. Her motion concerning the cause of action arising under Civil Code § 1719 is DENIED;

15. Plaintiffs' motion for summary judgment as to violations of § 1692e(5) for threats of litigation which were not intended to be taken is GRANTED as to Lundgren, Kling, Wood & Riddle, Scott Sweat and CheckRite. It is DENIED as to Reed Benson;

16. Summary judgment is DENIED as to both parties on the § 1692g issue;

17. Plaintiffs' motion for summary judgment for violations of § 1692e(3) is GRANTED; and

18. A Status Conference is **now set** for January 4, 1996 at 11:00 a.m. in Chambers. Counsel are ordered to file a status conference report setting forth their views as to the future course of this litigation, especially noting when they will be prepared for trial on the remaining issues, not later than seven (7) days preceding the Conference.

IT IS SO ORDERED.